694 A.2d 107

**Marcel BLITZ**

v.

**BETH ISAAC ADAS ISRAEL CONGREGATION.**

No. 1361, Sept. Term, 1996.

Court of Special Appeals of Maryland.

May 6, 1997.

Reconsideration Denied June 25, 1997.

462

464

Aaron I. Lubling, Baltimore, for appellant.

Brian H. Silver, Towson, for appellee.

Argued before CATHELL and HOLLANDER, JJ., and ROBERT SWEENEY, Judge (Retired) Specially Assigned.

HOLLANDER, Judge.

We must decide whether the Maryland Uniform Arbitration Act permits recovery of attorney's fees incurred in connection with a suit instituted to confirm and enforce an arbitration award, necessitated by a refusal to comply with binding arbitration. We must also determine whether the circuit court abused its discretion in declining to impose sanctions, pursuant to Maryland Rule 1–341.

Rabbi Marcel Blitz, appellant, and the Beth Isaac Adas Israel Congregation ("Beth Isaac" or "the Synagogue"), appellee, negotiated a binding arbitration agreement to resolve a dispute based on appellant's service as the Synagogue's rabbi. At the conclusion of the arbitration proceeding, the panel awarded Rabbi Blitz the sum of $5,000. When the Synagogue failed to pay, Rabbi Blitz resorted to litigation in the Circuit Court for Baltimore County to confirm and enforce the arbitration award. Although the court confirmed the award, it denied Rabbi Blitz's requests for attorney's fees and sanctions. He now presents the following questions for our review:

I. Did the Circuit Court err when it denied Blitz's request under Section 3–228 of the Courts and Judicial Proceedings

Code that he be awarded the attorney's fees he incurred in connection with confirming and enforcing the arbitration award against [Beth Isaac], in light of the clear, unambiguous and broad language in Section 3–228 which authorizes the Circuit Court to award the "costs of the petition, the subsequent proceedings, and disbursements" when the Circuit Court confirms an arbitration award?

II. Did the Circuit Court err when it denied Blitz's Motion for Sanctions under Maryland Rule 1–341 because of the Court's personal distaste for Court intervention in a dispute between a Rabbi and a Congregation, in light of the fact that the undisputed evidence before the Court demonstrated that the conduct of [Beth Isaac] and its attorney was without substantial justification and/or in bad faith and that conduct merited the imposition of sanctions?

III. Did the Circuit Court err when it denied Blitz's Motion to Alter or Amend Judgment, which requested, among other things, that the Court review certain documents, *in camera*, which would have proven that the conduct of [Beth Isaac] and its attorney was without substantial justification and/or in bad faith and that conduct merited the imposition of sanctions?

We conclude that the Maryland Uniform Arbitration Act ("the Maryland Act"), Maryland Code (1957, 1995 Repl.Vol.), § 3–228(b) of the Courts and Judicial Proceedings Article ("C.J."), does not authorize the award of attorney's fees. We are, however, of the view that the circuit court abused its discretion when it summarily denied appellant's alternative motion for sanctions. As we shall affirm in part and reverse in part, and remand the case for further proceedings, we need not address appellant's remaining question.

### Factual Background [1]

 A unanimous arbitration decision issued by a Beth

---

1. For completeness, our factual summary includes references to factual assertions in the parties' briefs.

Din,[2] a religious tribunal that arbitrated the parties' underlying dispute, is the central event underpinning the present controversy. The Beth Din, convened pursuant to an agreement between the parties dated February 27, 1994, was composed of a panel of three rabbis; each party selected one rabbi and the two rabbis then chose the third rabbi. In accordance with the terms of the contract, the decision of the Beth Din was to be "binding on both parties," as well as "final and with no appeal." On June 14, 1994, the Beth Din awarded Rabbi Blitz $5,000 in damages, payable in two installments; a $3,000 payment was due before July 9, 1994, and a $2,000 payment was due before July 28, 1995. Although the Synagogue did not contest the validity of the judgment in the period immediately subsequent to the Beth Din's decision, it failed to make either payment.

In January 1995, Rabbi Blitz filed suit in the District Court for Baltimore County, seeking to recover the money owed by the Synagogue.[3] After the Synagogue filed a Notice of Intention to Defend, Rabbi Blitz appeared for trial with two of the three rabbis who presided at the Beth Din. The Synagogue moved to dismiss for lack of subject matter jurisdiction, claiming the District Court lacked jurisdiction to confirm and enforce an arbitration award. That motion was granted, without prejudice.

Thereafter, in mid March, Rabbi Blitz's attorney notified the Synagogue that he would seek to enforce the arbitrators' award in court if the money was not paid. On March 28, 1996, Rabbi Blitz filed in the circuit court a Petition to Confirm and

---

**2.** The name of the tribunal has been alternatively transliterated from the Hebrew as Bais Din, Bet Din, or Beth Din, meaning "House of Judgment." *Kovacs v. Kovacs*, 98 Md.App. 289, 295 n. 1, 633 A.2d 425 (1993), *cert. denied*, 334 Md. 211, 638 A.2d 753 (1994). Maryland courts recognize the validity of arbitration proceedings at a Beth Din, even when the proceeding is not in strict compliance with the Act, as long as the parties knowingly and voluntarily agree to the arbitration procedures. *Kovacs*, 98 Md.App. at 304, 633 A.2d 425.

**3.** The record submitted to this Court does not include the District Court proceedings, but the parties refer to these proceedings in their briefs.

Enforce Arbitration Award and Complaint for Damages, as well as a motion for summary judgment, supported by the arbitration agreement, an affidavit from the rabbis who served on the Beth Din, and Rabbi Blitz's affidavit. He asked, *inter alia*, for costs and attorneys' fees, premised on C.J. § 3–228. The Synagogue was served on April 8, 1996, but it did not timely file its answer to the Petition. As a result, on May 14, 1996, the court signed an Order entering judgment in favor of Rabbi Blitz in the amount of $5,000, which was docketed on May 16, 1996. In the Order, the court said that Rabbi Blitz's attorney's fees would "be determined by the court upon submission of sufficient evidence in support thereof." As directed by the court, appellant promptly submitted an affidavit seeking attorney's fees and costs in the amount of $1,615.

■■■ By order dated May 22, 1996, docketed May 28, 1996, the circuit court entered judgment in favor of appellant in the amount of $415 for costs, but denied appellant's request for attorney's fees under C.J. § 3–228. Appellant then filed a "Motion for Reconsideration" on June 25, 1996, seeking to invoke the court's revisory power under Rule 2–535. After the court denied the motion on July 10, 1996, appellant noted his appeal on July 12, 1996.[4]

In the interim, on May 15, 1996, the Synagogue filed its answer, along with a Petition to Modify or Vacate the arbitra-

---

4. As the motion for reconsideration was not filed within ten days of the judgment, it did not stay appellant's time to appeal. *Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 200, 577 A.2d 34 (1990); *Stephenson v. Goins,* 99 Md.App. 220, 221–22, 636 A.2d 481, *cert. denied,* 335 Md. 229, 643 A.2d 384 (1994). Thus, regarding the issue of attorney's fees under C.J. § 3–228, appellant has timely appealed only from the court's order declining to exercise its revisory power over the judgment. An appeal from the denial of a motion asking the court to exercise its revisory power is not necessarily the same as an appeal from the judgment itself. Rather, the standard of review is whether the trial court abused its discretion in declining to revise the judgment. *New Freedom Corp. v. Brown,* 260 Md. 383, 272 A.2d 401 (1971); *B & K Rentals & Sales Co. v. Universal Leaf Tobacco Co.,* 73 Md.App. 530, 537, 535 A.2d 492 (1988). In this case, our review of the denial of the motion involves an analysis of the issue concerning statutory entitlement to legal fees.

tion award and a Response to Motion for Summary Judgment. It contended that "the arbitrators exceeded their authority;" it claimed that the parties had limited the arbitrators to a maximum award of $3,000. Because the order had already been signed when these papers were filed, it is unclear whether the judge revisited the order of May 14 before it was docketed on May 16.

Counsel for Rabbi Blitz contacted appellee's counsel to advise him that the Synagogue's challenges were untimely, based on C.J. § 3–223 (requiring filing of a petition to modify within 90 days after receipt of the arbitration decision) and C.J. § 3–224 (requiring filing of a petition to vacate within 30 days from receipt of the award). Although appellee's counsel was aware of the time limitations, he felt that the case of *C.W. Jackson & Assocs., Inc. v. Brooks*, 289 Md. 658, 426 A.2d 378 (1981), supported his contention that an arbitration can be vacated or modified after the statutory time limitations.[5] The record also includes a detailed and lengthy letter from Rabbi Blitz's attorney, confirming the conversation of counsel and containing legal authority to support Rabbi Blitz's position that the Synagogue's action lacked merit.

On May 17, 1996, Rabbi Blitz's attorney faxed to the Synagogue's counsel a copy of a sworn affidavit from the three rabbis who served on the Beth Din, attesting that the Synagogue's Petition violated the terms of the arbitration agreement. Further, the rabbis averred that the parties never agreed to limit the arbitrators' authority to an award of $3,000. Counsel for Rabbi Blitz also filed an Opposition to Defendant's Petition to Modify or Vacate, a Motion to Strike Defendant's Petition to Modify or Vacate, a Supplemental Memorandum in Support of Motion for Summary Judgment, and a Motion for Sanctions against the Synagogue and its lawyer, predicated upon Md. Rule 1–341. By letter dated May 29, 1996, however, appellant agreed to withdraw his

---

5. As we discuss, *infra,* appellee's reliance on this case is, in our view, misplaced.

motion for sanctions if the Synagogue would agree to abandon its position.

Meanwhile, on June 5, 1996, Rabbi Blitz served a writ of garnishment on First Union National Bank ("First Union") to satisfy the judgment from the Synagogue's cemetery fund. The Synagogue filed an Answer to and Motion to Dismiss Garnishment, asserting that the garnished account "is a trust account as defined in Md. C & J Code Ann., Sec. 11–603(b)," and supported by a copy of a bank statement and an affidavit. It was supplemented by a memorandum in which appellee asserted that the garnished account "is a trust fund that is *required* by [Maryland Code, Business Regulation Art. ("B.R.") (1957, 1992 Repl.Vol.), § 5–303], and is *specifically regulated* as a trust fund." (Emphasis supplied.)

Thereafter, appellant filed an opposition to the Synagogue's motion to dismiss the garnishment, and a supplemental legal memorandum, in which he averred that the account was not a "trust account," but a regular bank account, and that the applicable statutory law and the documentation submitted in support of appellee's motion did not support the Synagogue's contention that the account was a trust account. Nonetheless, appellee's counsel sent a letter to appellant requesting voluntary dismissal of the garnishment.

During a telephone conversation on July 1, 1996, confirmed by a letter of the same date, counsel for appellant advised appellee that B.R. § 5–302(a)(2)(iv), which immediately precedes one of the statutory provisions upon which the Synagogue relied, unequivocally provides that the subtitle does not apply to a cemetery that "is owned and operated by ... a synagogue." Because appellee's counsel indicated that he would research the matter, counsel for appellant opted to procure an affidavit from Stephen B. Nestor, a Vice President of First National, to refute the contention of a trust account. It stated, in part:

3. I have reviewed [the account] ... held ... in the name of Beth Isaac Adas Israel Congregation Cemetery Fund.

There are no records in the Bank's possession that would indicate that the Account was established as a trust account.

4. The Bank is not aware of any entity or individual that may be serving as a trustee for the Account.

5. The Bank is not aware of any trust agreement between any entity or individual and the Judgment Debtor concerning the Account.

6. The Account is not being administered by the Bank as a trust account.

On July 9, 1996, the Synagogue's attorney sought to settle by payment in full of the judgment and costs, exclusive of attorney's fees. On July 11, 1996, appellee sent Rabbi Blitz a check for $5,587 and an Order of Satisfaction. When appellee's counsel indicated that the Synagogue would take the position that appellant's acceptance of the money would render moot the appeal as to the denial of attorney's fees under C.J. § 3–228, appellant refused to accept the check. Consequently, on July 29, 1996, the Synagogue deposited $5,587 in the registry of the court. On the same day, Beth Isaac filed a motion to quash a subpoena duces tecum that appellant had served on First National. Additionally, the Synagogue filed a Motion for Sanctions against appellant, based on appellant's refusal to accept the money tendered by Beth Israel. It sought attorney's fees in the amount of $1,000, pursuant to Maryland Rule 1–341, although its counsel was representing Beth Isaac on a *pro bono* basis. On August 2, 1996, appellant's counsel faxed the Synagogue's attorney an eighteen page letter recounting the events that had transpired in connection with the litigation.

On August 8, 1996, another judge of the circuit court heard the outstanding motions. At that time, appellant submitted updated documentation of attorney's fees that he had incurred, totalling $2,235.

Before ruling on the motions for sanctions, the court, understandably frustrated, observed:

This case is a disgrace. It's disgraceful. It's disgraceful that you've got—to put it quite frankly, it pains me when I

look at this case to see how this case has evolved. This is wrong. This is, for you to be here in this court over this matter is, in my opinion it's disgraceful. And I tell you that, both of you, that for this to get to this point, a Rabbi and a congregation to be in this position with appeals to the Court of Special Appeals, with complaints, I want money from him, I want sanctions for him, he was no good, he lied, he lied. I tell you this is, to use the word unseemly is mild, compared to what I would like to use in this matter.

\* \* \* \* \* \*

Is this really the format that such a complaint should be aired, in a public courtroom? I mean, it—I read through this and, quite frankly, it disturbs me. It disturbs me as a judge. It disturbs me as a person.

During argument, Rabbi Blitz's attorney submitted a letter from the rabbi chosen by the Synagogue to serve as one of the arbitrators, which urged the court to consider an award of legal fees. The Synagogue's attorney claimed that "this case has gotten out of hand." The court thereafter granted the motion to quash, and denied the motions for sanctions. The court said, in pertinent part:

If I were awarding or considering sanctions, quite frankly, I wouldn't even—it would cause me very little difficulty to deny [the Synagogue's] request for sanctions because, quite frankly, I don't think Rabbi Blitz has done anything that is the subject matter of the request for sanctions that's either unjustified or wrong. So I am, so I would deny it on the merits. If it ever got to that point. I don't have to get to that point. It's been, in fact, said to me here in court today, we are not seeking that. I wouldn't award them if he was seeking them, to be honest with you, so the record is clear. That motion is denied.

In regard to Rabbi Blitz's motion for sanctions. I have to get back to what I said at the beginning. I understand your involvement in the case. I understand, [counsel for Rabbi Blitz], your passion based on what you perceive to be wrongful conduct on the part of the congregation. I under-

stand that. I appreciate your doing what you think the law provides for you to do to protect your client.

I don't think there is any question that if we were operating sometime ago, not too much in the past, that the idea that this kind of a case could wind up in a civil court subject to the publicity it's gotten, subject to the public airing that it's received, would be unthinkable. I wonder whether our practice now to have these kind of disputes subject to the rumor innuendo [sic], the articles, the publicity, I wonder whether that's a step forward, so to speak. Or whether that rule that existed previously made a lot more sense.

\* \* \* \* \* \*

I just, my thoughts are just, my feeling in regard to the matter, *let's assume that I find as a fact that the, that [sic] some of the actions on the part of the congregation were in bad faith, and were without substantial justification. . . . That finding doesn't entitle Rabbi Blitz to sanctions. That finding doesn't require the court to impose sanctions.*

The rule, Rule 1–341, specifically says that the court *may* award sanctions.

\* \* \* \* \* \*

I am troubled by some of the things that have occurred in this case reading this file. . . . But, quite frankly, to have sanctions imposed in a case like this, to have this case continue on, to have this be now the further matter for debate of, with the appellate courts of this State I don't think makes a bit of sense.

I think when we talk about the amount of money involved, the amount of money that is being asked for sanctions, the kind of conduct that was engaged in, *whether I ultimately come down with the decision that, yes, the scales have been tipped to show me that it was without substantial justification, even if I do that, even if I make those findings of fact, I can tell you, quite frankly, that in this kind of case the most just thing that I think a court can do, the proper thing is to try to put this case to rest. This has to end. It has to*

*end. This isn't worth this. It is not worth a few thousand dollars to have this continue. It truly isn't. It's for those reasons that the motion for sanctions filed by the Plaintiff are denied.*

(Emphasis added.) Appellant's subsequent Motion to Alter or Amend Judgment was denied on August 23, 1996, and appellant timely lodged another appeal.

## Discussion

### I.

 " 'Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. Arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement.' " *Kovacs v. Kovacs,* 98 Md.App. 289, 300, 633 A.2d 425 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 753 (1994) (quoting *Gold Coast Mall Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91 (1983)). It is often favored because it usually provides a speedy, informal, and less expensive alternative to litigation. *Birkey Design Group v. Egle Nursing Home, Inc.,* 113 Md.App. 261, 265, 687 A.2d 256 (1997); *Marsh v. Loffler Housing Corp.,* 102 Md. App. 116, 648 A.2d 1081 (1994). As an added benefit, arbitration facilitates the reduction of the court's docket. *Birkey,* 113 Md.App. at 265, 687 A.2d 256.

 The court's power to vacate an arbitration award is narrowly circumscribed; it can be exercised only to correct mistakes, C.J. § 3–223(b)(1), (3), or to provide relief when fraud, corruption, or denial of due process has tainted the legitimacy of the award. C.J. § 3–224(b)(1)–(4). The Maryland Act, C.J. § 3–224(c), specifically limits the court's powers in this regard: *"When award not to be vacated.*—The court shall not vacate the award or refuse to confirm the award on the ground that a court of law or equity could not or would not grant the same relief." *See Birkey Design,* 113 Md.App. at 265–66, 687 A.2d 256; *Marsh,* 102 Md.App. at 124, 648 A.2d 1081. Thus, the court's role with regard to the merits of an

arbitration decision is a deferential one, resembling the substantial evidence test employed by appellate courts in the review of administrative appeals. *See, e.g., United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226 (1994) ("Judicial review of administrative agency action is narrow."); *Moseman v. County Council,* 99 Md.App. 258, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994).

At the heart of this case is appellant's request, based on the Maryland Act, for attorney's fees in connection with his efforts to confirm and enforce the arbitration award, based on his claim that the Synagogue was unjustified in its refusal to comply with the award. It is well settled that the "American Rule" ordinarily does not permit recovery by the prevailing party of litigation expenses, including attorney's fees. *Hess Constr. Co. v. Board of Educ.,* 341 Md. 155, 159, 669 A.2d 1352 (1996); *Empire Realty Co. v. Fleisher,* 269 Md. 278, 285, 305 A.2d 144 (1973); *Bresnahan v. Bresnahan,* 115 Md.App. 226, 244, 693 A.2d 1 (1997). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 263–64, 95 S.Ct. 1612, 1616–17, 1624–25, 44 L.Ed.2d 141 (1975) (holding that in the absence of statutory authorization or contractual agreement, under the American rule, each party in federal litigation must pay its own attorney's fees; when Congress has not explicitly authorized such fees, courts should not award them simply to further public policy.) "As a general rule, a trial court may award attorneys' fees only in the unusual situation where the trial court is [statutorily] authorized to award the prevailing litigant reasonable attorneys' fees or where, as [sic] more common, a contract between the parties specifically authorizes attorneys' fees." *Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership,* 100 Md.App. 441, 452, 641 A.2d 977 (1994); *see also Hess,* 341 Md. at 160, 669 A.2d 1352; *Bresnahan,* 115 Md.App. at 244, 693 A.2d at 9. In contrast, usual and ordinary court costs are generally recoverable. *Hess,* 341 Md. at 159, 669 A.2d 1352; *Bresnahan,* 115 Md.App. at 244, 693 A.2d at 9.

It is clear that the parties here did not contractually provide for the recovery of attorney's fees. We consider, therefore, whether the Act authorizes the award of attorney's fees incurred in confirming and enforcing an arbitration award. We conclude that it does not.

In reaching our decision in this case, we must reconcile two conflicting canons of statutory construction. The first is the dictate that we may not read into a statute a meaning that is not expressly stated or clearly implied. *Amalgamated Cas. Ins. Co. v. Helms*, 239 Md. 529, 535–36, 212 A.2d 311 (1965); *Dep't. of Econ. and Employ. Development v. Taylor*, 108 Md.App. 250, 277, 671 A.2d 523 (1996), *aff'd*, 344 Md. 687, 690 A.2d 508 (1997) (per curiam). The second is the precept that we strive to construe a Uniform Act, such as this one, so as to conform with other jurisdictions. *Continental Oil Co. v. Horsey*, 177 Md. 383, 9 A.2d 607 (1939).

Appellant relies on C.J. § 3–228(b) which, as we shall see, does not expressly authorize recovery of attorney's fees. He also points to C.J. § 3–232, which provides: "This subtitle shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." Because other jurisdictions have permitted the recovery of attorney's fees incurred in actions instituted under their respective versions of the Uniform Arbitration Act ("the UAA"), appellant urges that C.J. § 3–232 requires us to construe C.J. § 3–228 to effect the same result. *See Anchorage Medical and Surgical Clinic v. James*, 555 P.2d 1320 (Alaska 1976), *overruled in part on other grounds, Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657 (Alaska 1995); *Canon Sch. Dist. No. 50 v. W.E.S. Construction Co.*, 180 Ariz. 148, 882 P.2d 1274 (1994); *County of Clark v. Blanchard Constr. Co.*, 98 Nev. 488, 653 P.2d 1217 (1982); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905 (Tenn.App.1991).

C.J. § 3–228 provides:

Judgment, costs and disbursements.

(a) *Entering of judgment; enforcement of judgment.*—(1) If an order confirming, modifying, or correcting an award is

granted, a judgment shall be entered in conformity with the order.

(2) The judgment may be enforced as any other judgment.

(b) *Costs and disbursements.*—**A court may award costs of the petition, the subsequent proceedings, and disbursements.**[6]

(Italics in original; boldface supplied.) Appellant concedes, as he must, that C.J. § 3–228 does not specifically provide for attorney's fees. He contends, however, that the provision implicitly permits recovery of legal fees, because such expenses are subsumed in the "costs" of "subsequent proceedings" and "disbursements," for which recovery is permitted under C.J. § 3–228.

The construction we have been asked to give to the Maryland Act would engraft upon the statute a meaning not evident from its plain language or legislative intent. Further, such an interpretation would require us to ignore well honed principles of statutory construction.

It is beyond question that the "cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intention." *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188 (1990); *see also Klingenberg v. Klingenberg,* 342 Md. 315, 327, 675 A.2d 551 (1996); *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995). Thus, in interpreting a statute, we endeavor to "ascertain and carry out the intent of the legislature." *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994); *see also Bowen v. Smith,* 342 Md. 449, 454, 677 A.2d 81 (1996); *Stapleford Hall Joint Venture v. Hyatt,* 330 Md. 388, 400, 624 A.2d 526 (1993); *Taxiera v. Malkus,* 320

---

6. The corresponding section of the Uniform Arbitration Act provides:

**Judgment or Decree on Award**

Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

UNIF. ARBITRATION ACT, § 14, 7 U.L.A. 419 (1997).

Md. 471, 480, 578 A.2d 761 (1990). In this regard, we consider the legislative objective, including the statutory purpose and the problem that the statute was intended to remedy. *See Mustafa v. State,* 323 Md. 65, 72, 591 A.2d 481 (1991); *Sinai Hosp. v. Dept. of Employment and Training,* 309 Md. 28, 40, 522 A.2d 382 (1987); *Maryland–Nat'l Capital Park & Planning Comm'n v. State Dep't of Assessments and Taxation,* 110 Md.App. 677, 689, 678 A.2d 602, *cert. granted,* 344 Md. 52, 684 A.2d 1327 (1996); *Gunpowder Horse Stables v. State Farm Auto. Ins. Co.,* 108 Md.App. 612, 617, 673 A.2d 721 (1996).

We look to the statutory language as the "primary source" to determine legislative intent. *Klingenberg,* 342 Md. at 327, 675 A.2d 551; *Privette,* 320 Md. at 744, 580 A.2d 188. The words used in the statute are accorded " 'their ordinary and popularly understood meaning, absent a manifest contrary legislative intention.' " *Klingenberg,* 342 Md. at 327, 675 A.2d 551 (quoting *In re Arnold M.,* 298 Md. 515, 520, 471 A.2d 313 (1984)); *see also Buckman,* 333 Md. at 523, 636 A.2d 448; *Privette,* 320 Md. at 744, 580 A.2d 188; *Harford County v. University of Maryland Medical Sys. Corp.,* 318 Md. 525, 529, 569 A.2d 649 (1990); *NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 544 A.2d 764 (1988). When a statute is unambiguous, the "courts may not disregard the natural import of the words used in order to extend or limit its meaning." *Privette,* 320 Md. at 745, 580 A.2d 188; *see also Board of Trustees of Md. State Retirement & Pension Sys. v. Hughes,* 340 Md. 1, 7–8, 664 A.2d 1250 (1995); *Buckman,* 333 Md. at 523, 636 A.2d 448; *In re Criminal Investigation No. 1– 162,* 307 Md. 674, 685, 516 A.2d 976 (1986); *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977). Therefore, "[i]f the statutory language is plain and free of ambiguity and has a definite and sensible meaning, it is conclusively presumed to be the meaning of the legislative body in enacting the statute." *Town of Somerset v. Montgomery County Bd. of Appeals,* 245 Md. 52, 71, 225 A.2d 294 (1966).

Further, "under the guise of construction, [we may not] supply omissions or remedy possible defects in the stat-

ute, or ... insert exceptions not made by the Legislature."
*Amalgamated Cas. Ins. Co.,* 239 Md. at 536, 212 A.2d 311; *see
McNeil v. State,* 112 Md.App. 434, 451–52, 685 A.2d 839 (1996).
Nor may we embellish a statutory provision so as to enlarge
its meaning. *Taylor,* 108 Md.App. at 277, 671 A.2d 523;
*Taylor v. Mayor and City Council of Baltimore,* 51 Md.App.
435, 447, 443 A.2d 657 (1982). Instead, we must "give effect to
that intention regardless of the consequences, even though
such effect may cause a hardship. Simply put, a court con-
struing an unambiguous statute must view the law as it is, and
not as it might wish it to be." *Brzowski v. Maryland Home
Improvement Comm'n,* 114 Md.App. 615, 627, 691 A.2d 699
(1997) (citations omitted).

To glean the Legislature's intent, a statute must also be
read as a whole, so that all provisions are considered together
and, to the extent possible, reconciled, and harmonized. *See
Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93 (1994); *Condon
v. State,* 332 Md. 481, 491, 632 A.2d 753 (1993); *Forbes v.
Harleysville Mut. Ins. Co.,* 322 Md. 689, 589 A.2d 944 (1991);
*Brzowski,* 114 Md.App. at 627, 691 A.2d 699; *Boyd v. Hick-
man,* 114 Md.App. 108, 122 n. 9, 689 A.2d 106 (1997). With
this principle in mind, we observe that, in contrast to C.J. § 3–
228(b), C.J. § 3–221 expressly addresses attorney's fees. It
states:

**Expenses and fees.**

(a) *Arbitrators.* —Unless the arbitration agreement pro-
vides otherwise, the award shall provide for payment of the
arbitrators' expenses, fees, and any other expense incurred
in the conduct of the arbitration.

(b) *Counsel fees.*—Unless the arbitration agreement pro-
vides otherwise, the award *may not include counsel fees.*
(Emphasis supplied.)

■ Clearly, the Legislature contemplated the issue of
attorney's fees in C.J. § 3–221, yet declined to authorize them
in that section, absent a contractual provision. *See Birkey,*
113 Md.App. at 266, 687 A.2d 256. While we are unaware of
any legislative history in connection with the use of the terms

"costs and disbursements" in C.J. § 3–228, we recognize that the "power to award attorney's fees, being contrary to the established practice in this country, may be expressly conferred but will not be presumed from general language." *Talley v. Talley,* 317 Md. 428, 438, 564 A.2d 777 (1989). The specific reference to attorney's fees in C.J. 3–221, coupled with its omission in C.J. § 3–228(b), leads us to conclude that the Legislature did not intend in C.J. § 3–228 to permit recovery of legal fees, under the guise of "costs" or "disbursements," incurred in confirming and enforcing an arbitration award. Surely, if the Legislature wanted to authorize an award of legal fees under such circumstances, it would have expressly said so, particularly in view of the principles of the "American Rule." [7]

Our view is undergirded by a comparison of C.J. § 3–228 with other provisions of the Maryland Code, in which the Legislature specifically grants the right to attorney's fees in certain circumstances. *See, e.g.,* the Administrative Procedure Act, Maryland Code, State Government Article (1957, 1995 Repl.Vol.), § 10–623(f) ("If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit *reasonable counsel fees* and other litigation costs that the complainant reasonably incurred.") (emphasis added); the Consumer Protection Act, Maryland Code, Commercial Law Article ("C.L."), (1957, 1990 Repl.Vol.) § 13–408(b) (*"Attorney's fees.*—Any person who

---

7. Federal courts have concluded that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1994) ("the FAA"), does not authorize the award of attorney's fees for confirming an arbitration award or defending against a frivolous motion to modify or vacate an award. The FAA, like the Maryland Act, only permits modification or vacation under limited circumstances, such as fraud, misconduct, miscalculation, or other mistake. *See Menke v. Monchecourt,* 17 F.3d 1007, 1009 (7th Cir.1994) (concluding that the FAA did not authorize the award of attorney's fees); *Raytheon Co. v. Computer Distributors, Inc.,* 632 F.Supp. 553, 560 (D.Mass.1986) (noting that the FAA "makes no provision for taking evidence on ... attorneys' fees.... There is no mechanism for a trial of factual issues. In the absence of any such statutory authority, the court is powerless to receive evidence concerning attorneys [sic] fees and award an amount it would find appropriate.").

brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, *reasonable attorney's fees.*") (emphasis supplied); C.L. § 11–1204 (empowering the trial court to award reasonable attorney's fees to the prevailing party if a misappropriation claim under the Maryland Uniform Trade Secrets Act has been brought in bad faith or where willful and malicious misappropriation has been shown); the Maryland Fair Employment Practices Act, Maryland Code (1957, 1994 Repl.Vol.), Article 49B, § 42 ("Civil actions for discriminatory acts . . . *(c) Fees and costs.*—In a civil action under this subtitle, the court, in its discretion, may allow the prevailing party *reasonable attorney's fees,* expert witness fees, and costs.") (emphasis supplied).

Appellant has not identified even a single Maryland case that has interpreted the terms "costs" or "disbursements" to include attorney's fees. Nevertheless, based on C.J. § 3–232, appellant urges us to conform the Maryland Act to decisions of other jurisdictions that have construed their state versions of the UAA to permit recovery of attorney's fees. The reasoning of these cases does not persuade us that we must adhere to the goal of uniformity, without regard to other considerations. Stated otherwise, we cannot adopt those decisions merely for the sake of uniformity.

We are aware of only four states that have considered the precise issue before us: whether, in the absence of an express contractual or statutory authorization to recover attorney's fees, such fees may be recovered when incurred incident to confirming and enforcing an award because of a baseless or specious refusal to comply with the award.

The first case, *Anchorage Medical,* was decided in 1976; it does not provide a helpful analysis. Rather, it summarily equates "attorney's fees" with "disbursements." We reproduce below the court's entire discussion of the issue:

Clinic's final point in this appeal is that the superior court erred in awarding $1,000 in attorney's fees to Dr. James. AS 09.43.140 of our Uniform Arbitration Act authorizes the

superior court to award "costs and disbursements" to the prevailing party in an action to affirm or modify an arbitration award. Our review of the record has convinced us that the award of attorney's fees should not be disturbed.

*Anchorage Medical,* 555 P.2d at 1324.

The court's analysis in *County of Clark* is equally sparse. Here, the court affirmed the grant of attorney's fees incurred in confirmation of an award, but reversed the grant of attorney's fees incurred during the arbitration itself, because the statute "specifically excludes the award of attorney's fees in the absence of an express agreement to the contrary among the parties." *County of Clark,* 653 P.2d at 1220. In affirming the court's award of attorney's fees incurred in connection with the confirmation proceeding, the court reasoned:

The second applicable section, NRS 38.165, permits the court to award expenses incurred in seeking an order confirming, modifying or correcting an arbitration award. "Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court." We interpret this provision to mean that the court is permitted to award attorney's fees only for the effort expended in this case in obtaining an order confirming the arbitration award and not for any efforts expended prior to that time. *See Stein v. Feldmann,* 85 Ill.App.3d 973, 41 Ill.Dec. 270, 407 N.E.2d 768 (1980).

*Id.* The court noted, further, that "[t]he award of attorney's fees resides within the discretion of the court," and that the trial judge was "peculiarly aware" of the attorney's efforts expended in confirming the award. *Id.*

*County of Clark* relied solely on *Stein v. Feldmann,* 85 Ill.App.3d 973, 41 Ill.Dec. 270, 407 N.E.2d 768 (1980), as authority for its holding. *Stein* is not relevant, however, because it involved an arbitration agreement that specifically provided for attorney's fees.

"Enforcement of the Award shall be as prescribed by the Uniform Arbitration Act (Ill.Rev.Stat. Chapter 10, Sections 101 to 123). In the event that any party shall be required

to apply to a court of competent jurisdiction for inforcement [sic] of the Award, then all court costs *and reasonable attorney's fees* incurred in said proceedings shall be included as an additional obligation."

*Stein,* 85 Ill.App.3d at 973, 41 Ill.Dec. at 271, 407 N.E.2d at 769 (emphasis supplied). The trial court, reasoning that the moving party had represented himself, and that therefore no attorney's fees had been paid out, denied a motion for attorney's fees. The appellate court affirmed, noting that the agreement was governed by Illinois's version of the UAA, which provided that " '[c]osts of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court as to the court seems just.' " *Id.* at 974, 41 Ill.Dec. at 271, 407 N.E.2d at 769 (quoting Ill.Rev.Stat.1977, ch. 10, par. 114). As the court found no abuse of discretion in the *denial* of attorney's fees, it did not directly address the question of whether the court's authority to *award* attorney's fees arose from the relevant section of Illinois's arbitration act.

The two remaining cases that support appellant's construction of C.J. § 3–228 are *Wachtel,* 830 S.W.2d 905, and *Canon Sch. Dist. No. 50,* 180 Ariz. 148, 882 P.2d 1274. Both of these cases rely heavily on the principle that Uniform Acts should be interpreted so as to promote uniformity among states. The *Wachtel* court relied on the decision in *County of Clark* in holding that Tennessee's version of the UAA authorized a trial court to exercise discretion in awarding attorney's fees. The *Canon Sch. Dist. No. 50* court cited *Anchorage Medical, County of Clark,* and *Wachtel* in support of the same interpretation of Arizona's version of the UAA.

In *Canon Sch. Dist. No. 50,* the Arizona Supreme Court felt the stated policy of inter-jurisdictional uniformity was so strong as to trump its normal canons of statutory construction. It reasoned:

Although we would normally conclude that the legislature intended to exclude attorney's fees where they were not expressly included, we deal here with a Uniform Act, the

drafting of which was not done by our legislature. The Uniform Act has taken a different approach, expressly excluding attorney's fees in A.R.S. § 12–1510 [the section governing expenses of the arbitration itself], but not excluding fees in the confirmation section.

*Canon Sch. Dist. No. 50,* 882 P.2d at 1279 (citations omitted).

Similarly, the *Wachtel* court relied upon the uniformity rationale:

"It is axiomatic that a purpose in enacting uniform laws is to achieve conformity, not uniqueness. While opinions by courts of sister states construing a uniform act are not binding upon this court, we are mindful that the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions. This court should strive to maintain the standardization of construction of uniform acts to carry out the legislative intent of uniformity. This does not mean that this court will blindly follow decisions of other states interpreting uniform acts but, this court will seriously consider the constructions given to comparable statutes in other jurisdictions and will espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state."

*Wachtel,* 830 S.W.2d at 909 (quoting *Holiday Inns, Inc. v. Olsen,* 692 S.W.2d 850 (Tenn.1985)).

These cases form a species of jurisprudence by conformity, in which the weight of authority seems to snowball, making inevitable each successive court's consonant result. Absent an otherwise principled basis for such a statutory interpretation, we decline to follow suit. We would be doing so only to achieve conformity with various state enactments of the UAA. In our view, the goal of uniformity among jurisdictions does not override other important canons of statutory construction.

The rationale for following other jurisdictions merely because those jurisdictions have spoken first is weakened when we consider that the Maryland Act varies from the UAA, and other states' versions of the UAA vary as well. State legislatures, including Maryland, have modified the language of the

UAA when enacting it. At least five other states have departed from the UAA to a significant degree.[8] One particularly relevant example is the Utah Arbitration Act, which provides: "Costs incurred incident to any motion authorized by this chapter, including a reasonable attorney's fee, unless precluded by the arbitration agreement, may be awarded by the court." *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.,* 925 P.2d 941, 952 (Utah 1996) (quoting Utah Code Ann. § 78–31a–16).

Maryland is no exception. The following annotation to the UAA is pertinent:

> While the Maryland act is a substantial adoption of the major provisions of the Uniform Act, it departs from the official text in such manner that the various instances of substitution, omission and additional matter cannot be clearly indicated by statutory notes [to the UAA].

UNIF. ARBITRATION ACT, General Statutory Note 7 U.L.A. 3 (1997).

The case of *Wilson v. McGrow, Pridgeon & Co.,* 298 Md. 66, 467 A.2d 1025 (1983), indicates that the Maryland Act does not conform in all respects to the UAA. There, the Court of Appeals interpreted C.J. § 3–206(b), which provides that the Maryland Act does not apply to agreements between employers and employees unless the agreement expressly provides that the Act *shall* apply. *Id.* at 68, 467 A.2d 1025. In contrast, the UAA has the opposite rule: the UAA specifically applies to agreements to arbitrate between employers and employees, unless the agreement expressly stipulates that it *shall not* apply. *Id.* at 71–72, 467 A.2d 1025; UNIF. ARBITRATION ACT, § 10, 7 U.L.A. 7 (1997). By departing from the UAA, our Legislature has signalled a willingness to promote individuality over uniformity, and not to bind itself to the precise language of the UAA.

---

8. Those states are Delaware, Michigan, Pennsylvania, Utah and Vermont. UNIF. ARBITRATION ACT, General Statutory Note 7 U.L.A. 3–5 (1997).

■ In sum, we decline to move like lemmings toward the precipice of an erroneous interpretation of an unambiguous statute by summarily subscribing to uniformity for uniformity's sake, when other sound principles of statutory construction mandate a different result. Arbitration is a creature of contract and statute, and the role of the courts in the process has been narrowly tailored. Parties may protect themselves from bad faith refusals to abide by arbitration decisions and frivolous actions to modify or vacate awards by providing for those eventualities in the arbitration agreement itself. The parties did not do so here, and we cannot alter their contract. Nevertheless, when litigation is instituted to confirm and enforce an award because of a substantially unjustified refusal to honor the award, attorney's fees may be recovered as a sanction, in accordance with Maryland Rule 1–341.

## II.

Appellant contends that the court abused its discretion by denying his motion for sanctions, which was predicated on Maryland Rule 1–341. While we express no opinion on the merits of the motion, we are satisfied that, in the disposition of this motion, the court abused its discretion. We explain.

Maryland Rule 1–341 provides:

In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

■ "Rule 1–341 allows reimbursement of attorney's fees only upon a finding that the attorney or party maintained or defended a proceeding in bad faith or without substantial justification." *Tobin v. Marriott Hotels, Inc.,* 111 Md.App. 566, 576, 683 A.2d 784 (1996); *see Merriken v. Merriken,* 87 Md.App. 522, 546, 590 A.2d 566 (1991). The rule is intended

to prevent abuses of the judicial process in the form of claims or defenses that are frivolous or posed in bad faith. *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173 (1988). It is not, however, intended to chill litigants from presenting questionable or innovative causes or defenses. *United States Health, Inc. v. State,* 87 Md.App. 116, 128, 589 A.2d 485, *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991); *Legal Aid Bureau, Inc. v. Bishop's Garth Assocs. Ltd. Partnership,* 75 Md.App. 214, 224, 540 A.2d 1175, *cert. denied,* 313 Md. 611, 547 A.2d 188 (1988).

Sanctions are "an extraordinary remedy" that "should be used sparingly." *Seney v. Seney,* 97 Md.App. 544, 549, 631 A.2d 139 (1993); *see also Lebac v. Lebac,* 109 Md.App. 396, 410, 675 A.2d 131 (1996). Indeed, they are "reserved for the rare and exceptional case," *Black v. Fox Hills North Community Ass'n,* 90 Md.App. 75, 83, 599 A.2d 1228, *cert. denied,* 326 Md. 177, 604 A.2d 444 (1992), to reach "intentional misconduct." *Talley,* 317 Md. at 438, 564 A.2d 777. Because " '[f]ree access to the courts is an important and valuable aspect of an effective system of jurisprudence,' " *Dent v. Simmons,* 61 Md.App. 122, 124, 485 A.2d 270 (1985) (quoting *Young v. Redman,* 55 Cal.App.3d 827, 838, 128 Cal.Rptr. 86 (1976)), the imposition of sanctions requires "clear evidence" that the action or defense at issue "is entirely without color and taken for other improper purposes amounting to bad faith." *Needle v. White, Mindel, Clarke & Hill,* 81 Md.App. 463, 474, 568 A.2d 856, *cert. denied,* 319 Md. 582, 573 A.2d 1338 (1990).

When a court imposes sanctions under Rule 1–341, it must follow a two-step process. First, the court must make a specific finding as to whether the conduct at issue was either in "bad faith" or "without substantial justification," or both. *Major v. First Virginia Bank,* 97 Md.App. 520, 530, 631 A.2d 127, *cert. denied,* 331 Md. 480, 628 A.2d 1067 (1993); *Johnson v. Baker,* 84 Md.App. 521, 528, 581 A.2d 48 (1990), *cert. denied,* 322 Md. 131, 586 A.2d 13 (1991). This finding is reviewed under a "clearly erroneous" standard. *Inlet Assoc. v. Harri-*

*son Inn Inlet, Inc.,* 324 Md. 254, 267, 596 A.2d 1049 (1991). The record must show that the trial court made the requisite findings and reflect the basis for the findings. *Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.,* 323 Md. 200, 210, 592 A.2d 498 (1991). Second, once the court finds that a party or attorney is guilty of bad faith or conduct without substantial justification, the court must use its discretion and determine whether the wrongdoing warrants the imposition of sanctions. *Inlet Assoc.,* 324 Md. at 267–68, 596 A.2d 1049; *Seney,* 97 Md.App. at 549, 631 A.2d 139. This determination is reviewed under an "abuse of discretion" standard. *Inlet Assoc.,* 324 Md. at 268, 596 A.2d 1049.

 If a court determines that sanctions are appropriate under Rule 1–341, the court has latitude to exercise discretion in the dollar amount it awards. In this regard, the court may consider various factors, including time spent by counsel defending an unjustified or bad faith claim, the judge's knowledge of the level of legal expertise involved in litigating the case, the attorney's experience and reputation, customary fees, and affidavits submitted by counsel. *Major,* 97 Md.App. at 540, 631 A.2d 127.

 Once findings of fact have been made, even if the circuit court determines that a party has acted in bad faith or without substantial justification, it may, as the court below correctly observed, decline to impose sanctions, in the exercise of its discretion. *Hauswald Bakery v. Pantry Pride Enterprises, Inc.* 78 Md.App. 495, 507, 553 A.2d 1308 (1989); *Blanton v. Equitable Bank, Nat'l Ass'n,* 61 Md.App. 158, 166, 485 A.2d 694 (1985); *cf. Blanton,* 61 Md.App. at 166, 485 A.2d 694 (stating that, under former Rule 604b, sanctions were mandatory if court made factual findings of bad faith or lack of substantial justification).

 A trial court need not make factual findings in connection with every Rule 1–341 motion. Rather, if the motion is "patently groundless," *i.e.* where no basis for granting sanctions appears in the record, the trial court may summarily deny the motion without issuing factual findings.

*Fowler v. Printers II, Inc.*, 89 Md.App. 448, 487, 598 A.2d 794 (1991), *cert. denied*, 325 Md. 619, 602 A.2d 710 (1992). Nevertheless, as a corollary, when "the record does not clearly reflect the meritlessness of the Rule 1–341 motion, the trial court *must* make findings as to bad faith and/or substantial justification when denying the motion. Without such a finding, it is impossible for an appellate court to review the circuit court's decision." *Id.* (emphasis supplied). It is this principle that is critical here.

A brief review of the facts demonstrates that appellant's Rule 1–341 motion was not meritless. While there is some suggestion in the record that the Synagogue lacked the ability to pay the arbitration award, it steadfastly insisted that the arbitrators exceeded their authority; their position directly contradicted the parties' written contract. Moreover, the Maryland Act obligated appellee to proceed with dispatch in challenging the award.[9] Yet the Synagogue delayed for

---

9. C.J. § 3–227 provides:
 **Confirmation of award by court.**
 (a) *Petition.*—A party may petition the court to confirm the award.
 (b) *Action by court.*—The court shall confirm the award, unless the other party has filed an application to vacate, modify, or correct the award within the time provided in §§ 3–222 and 3–223.
 (c) *Proceedings when award not confirmed.*—If an application to vacate, modify, or correct the award has been filed, the court shall proceed as provided in §§ 3–223 and 3–224.
 C.J. § 3–223 provides, in relevant part:
 **Correction or modification of award by court.**
 (a) *Petition.*—A petition to modify or correct the award shall be filed within 90 days after delivery of a copy of the award to the applicant.
 * * * * * *
 (c) *Confirmation of award.*—If the petition is granted, the court shall modify or correct the award to effect its intent and confirm the award as modified or corrected. Otherwise, the court shall confirm the award as made.
 C.J. § 3–224 provides in relevant part:
 **Vacating award.**
 (a) *Petition.*—(1) Except as provided in paragraph (2), a petition to vacate the award shall be filed within 30 days after delivery of a copy of the award to the petitioner.
 (b) *Grounds.*—The court shall vacate an award if:
 * * * * * *
 (3) The arbitrators exceeded their powers. . . .

some two years before asserting any challenge. The statutory deadlines for a petition to vacate, modify, or correct an arbitration award are mandatory. If a motion is not timely filed, the circuit court must grant a petition to confirm an award. *Board of Educ. of Charles County v. Education Ass'n of Charles County*, 286 Md. 358, 366, 408 A.2d 89 (1979) (unless award is challenged within statutory time constraints, trial court must confirm award); *see also Brzowski*, 114 Md.App. at 625–26 n. 4, 691 A.2d 699 (concluding that "appellant lost any right he might have had to initiate a challenge against the award" because of failure to comply with C.J. §§ 3–223, 3–224); *Birkey*, 113 Md.App. at 272, 687 A.2d 256 (stating that, under C.J. § 3–232, "appellant is estopped from arguing ... issue on appeal because it failed to raise this argument" within statutory time.); *Schaper & Assocs. v. Soleimanzadeh*, 87 Md.App. 555, 560, 590 A.2d 583 (1991) (noting that a party seeking to vacate an award has an "obligation" to file petition to vacate within time allotted by statute).

Appellee's reliance on *C.W. Jackson & Assocs., Inc. v. Brooks*, 289 Md. 658, 426 A.2d 378 (1981), to justify its belated challenge was misplaced. There, the plaintiff sought to modify or vacate an arbitration award, pursuant to C.J. §§ 3–223 and 3–224; the award provided a 90 day period in which the breaching contractor was to repair its work, which was subsequently extended to seven months. When the seven months passed with the original plaintiff refusing to allow the contractor to repair the problem, the contractor filed a petition to modify the award. The Court of Appeals determined that the circuit court had continuing equitable jurisdiction over the matter, although the contractor's claim had not been brought within the time required by C.J. §§ 3–223 and 3–224. But this was because the basis for the modification did not arise until later than 90 days after the arbitration award. In contrast, the contention here that the arbitrators exceeded their powers was ascertainable immediately upon the issuance of the award, and did not depend upon events subsequent to the award.

We need not review further our lengthy recitation of the factual allegations. The court declined to make any findings of fact, apparently because of its distaste for the parties' public airing of a dispute that the court felt did not belong in court, coupled with its determination that it would not award sanctions even if it found bad faith or lack of substantial justification. While we understand the trial court's desire to bring closure to this protracted and emotionally charged case, it was obligated to consider the merits of the motion, as the motion was not patently frivolous.

▇▇ When a court must exercise discretion, the failure to do so usually constitutes reversible error. *In Re Don Mc*, 344 Md. 194, 201, 686 A.2d 269 (1996); *Maus v. State*, 311 Md. 85, 532 A.2d 1066 (1987); *Lone v. Montgomery County*, 85 Md. App. 477, 485, 584 A.2d 142 (1991); *see also Adams v. Offender Aid & Restoration, Inc.*, 114 Md.App. 512, 518–19, 691 A.2d 248 (1997) (finding error when trial judge failed to exercise her discretion to consider transferring an improperly filed claim to the proper venue in the interest of justice under Maryland Rule 2–327(b)).

> To play fair, a trial judge relying upon discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision. If the appellate court concludes that he considered inappropriate factors or that the range of his discretionary authority should be partially fenced by legal bounds, it will be in a position to·do this intelligently.

Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 665–666 (1971).

The import of the conduct of the parties and their counsel must be left to another day. Because appellant was entitled to have the court address the merits of his motion for sanctions, and the court declined to make any factual findings, we shall remand the case for further proceedings consistent with this opinion. *See Fowler*, 89 Md.App. at 487, 598 A.2d 794.

JUDGMENT DENYING ATTORNEY'S FEES UNDER C.J. § 3–228 AFFIRMED; JUDGMENT DENYING SANCTIONS UNDER RULE 1–341 REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND APPELLEE.