**David K. WACHTEL, Jr., and Tyrus R. Gainer, Plaintiffs/Appellees,**

**v.**

**SHONEY'S, INC., Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

Nov. 1, 1991.

Application for Permission to Appeal
Denied by Supreme Court
March 23, 1992.

Gary M. Brown, Farris, Warfield & Kanaday, Nashville, for defendant, appellant.

Steven A. Riley, Bass, Berry & Sims, Nashville, for plaintiffs, appellees.

TOMLIN, Presiding Judge (Western Section).

Plaintiffs David K. Wachtel, Jr. ("Wachtel") and Tyrus R. Gainer ("Gainer") filed

suit in the Chancery Court of Davidson County against defendant, Shoney's, Inc. ("Shoney's") seeking to have that court confirm an arbitration award in their favor. The parties had agreed to arbitrate plaintiffs' dissenters' rights as minority stockholders in a corporation in which Shoney's was the majority stockholder. The award of the arbitrators included not only the determined value of the stock owned respectively by Wachtel and Gainer, but attorney fees and interest as well. The Chancellor also awarded plaintiffs attorney fees for prosecuting the action of confirmation as well as post judgment interest from the date the arbitrators ordered the award to be paid. We perceive the issues on appeal to be as follows:

(1) Whether the arbitration panel exceeded its authority in awarding plaintiffs attorney fees, expenses and interest in connection with the determination of the fair value of plaintiffs' stock.

(2) Whether the trial court erred in awarding attorney fees and expenses to plaintiffs pertaining to their suit for confirmation of the arbitration award.

We resolve both these issues in favor of plaintiffs and affirm.

A recitation of some of the background facts is necessary in order to fully understand the circumstances that led to the arbitration agreement. Until 1982 Wachtel was president of Shoney's. However, at that time he was terminated because of disagreements with the chairman of the board and Shoney's founder. Gainer is Wachtel's brother-in-law.

In 1978 Tennessee D's, Inc. (TDI) was organized to own and operate Captain D's seafood restaurants in the east Tennessee area as a franchisee of Shoney's, the holder of the Captain D's franchise rights. Wachtel, Gainer and four others were stockholders. Even though he had been terminated by Shoney's, Wachtel retained his stock in TDI and took an active interest in the company.

At some point after the creation of TDI, some of the stockholders were persuaded to transfer their stock in TDI to Shoney's, allegedly as a condition of their continued employment. Thereafter Shoney's became a 57% stockholder in TDI, with Wachtel owning 19%, Gainer 5% and Rod Zabel 19%. The record reflects that Shoney's as majority stockholder took certain steps in an attempt to suppress the development of TDI during the early and middle years of the 1980s. After some negotiations, Shoney's was able to "persuade" Zabel to sell his stock in TDI to it, leaving as the only two remaining stockholders Wachtel with 19% and Gainer with 5%.

In the spring of 1987 as majority shareholder of TDI, Shoney's called a special shareholders' meeting for the purpose of considering the merger of TDI with Evadon Corporation, a newly created, wholly owned subsidiary of Shoney's. As an indication of the hostile feelings between Shoney's and Wachtel, the name Evadon was created by using "No Dave" spelled backward. "Dave" is Wachtel's first name. At the specially called stockholders meeting on April 13, 1987, with Shoney's owning and controlling 76% of the stock, the merger agreement was approved. Under the merger plan plaintiffs were each offered $575 per share for their respective shares of stock in TDI.

A principal result of the merger between TDI and Evadon was the activating of plaintiffs' statutory right as minority stockholders to dissent and thereby decline to accept the price offered to them by Shoney's. Plaintiffs proclaimed the offer by Shoney's inadequate and chose to seek relief pursuant to the provisions of T.C.A. §§ 48-1-909—919 in the Chancery Court to have the fair value of their stock determined.

Rather than get involved in protracted litigation, in December, 1987 the parties entered into an arbitration agreement, to become effective as of April 13, 1987, the date of the stockholders' meeting approving the merger. The following excerpts from the preamble of this agreement clearly set forth its intent and purpose:

> WHEREAS, the merger of Tennessee D's, Inc. and Evadon Corporation was a transaction giving rise to Wachtel and

Gainer having rights to dissent and receive the fair value of their shares in Tennessee D's, Inc. pursuant to Tenn. Code Ann. § 48–1–909 through § 48–1–919; and

WHEREAS, the parties desire to fully settle any dispute regarding Wachtel and Gainer's ownership in Tennessee D's, Inc. and to provide for Wachtel and Gainer to receive the fair value of their Tennessee D's, Inc. stock, such fair value to be determined by binding arbitration rather than through the procedures set forth in Tenn.Code Ann. § 48–1–909 through § 48–1–919;

The arbitration hearing was conducted by three arbitrators, each of whom was a licensed attorney. One was selected by Wachtel and Gainer, one by Shoney's and the third by the two arbitrators selected by the parties.

Section 3.7 defined the question to be decided by the arbitrators. It reads as follows:

> *Question to be Arbitrated.* The only question to be submitted to and decided by the arbitrators shall be the fair value (within the meaning of Tenn.Code Ann. §§ 48–1–909–919), as of April 12, 1987, of the 400 shares of Tennessee D's, Inc. common stock owned by David K. Wachtel, Jr. and the value of the 100 shares of Tennessee D's, Inc. common stock owned by Tyrus R. Gainer.

The first paragraph of § 3.3, *Procedure,* is also material to this litigation. It reads as follows:

> *Procedure.* Except as they may be inconsistent with the express provisions of this Agreement, all matters relating to the arbitration procedures shall be governed by the Commercial Arbitration Rules of the American Arbitration Association; provided, however, that in rendering their decision and award the arbitrators shall apply the principles of statutory and common law (including, without limitation, Tenn.Code Ann. § 48–1–915) which in their opinion are applicable to the facts and the taking of testimony, presentation of argument and evidence, and all other procedure (including dis-

covery on the limited issue to be arbitrated, which discovery shall be completed within ninety [90] days) shall, as far as the arbitrators deem practicable, be governed by the usual rules applied in courts of Davidson County, Tennessee.

At the arbitration hearing, the panel was made fully aware of the fact that plaintiffs intended to seek an award of pre-award interest and attorney fees and expenses, and that Shoney's contested the authority of the panel to make such an award. After hearing all the testimony and closing arguments the panel unanimously awarded Wachtel and Gainer $1,558 per share for their stock in TDI along with $271,906 in pre-award interest and $64,000 in attorney fees and expenses. In keeping with the language of the arbitration agreement Shoney's was ordered to pay the above stated sums by November 5, 1990. Shortly before this deadline Shoney's notified plaintiffs that to the extent the panel's award included pre-award interest, attorney fees and expenses, the award was rejected and Shoney's refused to pay these amounts. This suit ensued shortly thereafter.

I. *The Scope of the Arbitrators' Authority.*

■ Shoney's contends that the only question to be decided by the arbitrators was the fair value of TDI stock "within the meaning of TCA §§ 48–1–901–919." These sections have already been identified and labeled as the "dissenters shareholders statutes."

As previously noted, the arbitrators were directed to follow the common law and statutory principles set forth in TCA § 48–1–915, among others, which reads in part as follows:

**Suit for determination of shareholders entitled to payment and value of shares.—**

> . . . .

> (b) In any such suit the court shall render a decree against the corporation for the dissenting shareholders entitled to receive payment in the amount of the fair value of their shares, plus interest from the date the demand period expired

to the date of payment, except that interest may be denied any shareholder if the court shall find that the shareholder's refusal to accept the corporate offer of payment for his shares was arbitrary or vexatious or otherwise not in good faith.

(c) Costs and expenses of any such proceeding, including reasonable attorney fees, shall be determined and shall be assessed against the corporation, but all or any part of such costs and expenses may be apportioned and assessed as the court may deem equitable against any dissenting shareholder who is a party to the suit if the court shall find that the action of the shareholder was arbitrary or vexatious or otherwise not in good faith.

In other words, just as the court in a dissenter's rights suit is directed to award both interest and attorney fees, this same directive was given to the arbitrators by virtue of the appropriating of these statutes into the arbitration agreement.

■■■■ Defendants contend that § 3.3 of the arbitration agreement has as its sole purpose the describing of the methods to be used in determining the fair value of the TDI stock. This argument is without merit. When the parties enter into a binding arbitration agreement, they are essentially entering into a contract and the contours of the arbitrators authority in a given case are set by the arbitration agreement. *Bowater North Am. Corp. v. Murray Machinery*, 604 F.Supp. 821 (E.D.Tenn.1984); *aff'd*, 773 F.2d 71 (6th Cir.1985). It is the responsibility of the courts to give as broad a construction to an arbitration agreement as the words and intentions of the parties, drawn from their expressions, will warrant, and to resolve any doubts in favor of arbitration. *In re: DeWitt v. Al–Haddad*, 15 TAM 23–6, Court of Appeals, W.S. at Nashville, April 25, 1990, 1990 WL 50727.

While a dissenter's rights lawsuit is filed for the purpose of determining the fair value of the stock owned by the dissenting shareholder, it is clear that our legislature has provided for the award of attorney fees and interest in the prosecution of such a suit. In the preamble of the arbitration

agreement the parties acknowledged that the merger of TDI and Evadon gave rise to plaintiffs' dissenters' rights, which included among other things having their shares valued pursuant to T.C.A. § 48–1–909, *et seq.* Furthermore, the parties have clearly acknowledged in the preamble of their arbitration agreement that instead of litigating the dissenters' rights pursuant to statute, the fair value would be determined by binding arbitration through the same procedures and exercising the same rights as set forth in the dissenters' rights statutes. The arbitrators were following the agreement as well as the dissenters' rights statutes to the letter of the law. The trial court was correct in ruling as he did.

A case we feel is somewhat on point is that of *Ierna v. Arthur Murray Intl., Inc.*, 833 F.2d 1472 (11th Cir.1987). This case involved the award by an arbitration panel of attorney fees to the prevailing party in the arbitration. In *Ierna*, following a favorable decision in binding arbitration, defendants filed a motion in the district court to modify the award to include costs, expenses and attorney fees, or in the alternative to confirm the award but remand the case to the arbitration panel to determine costs and expenses. Following remand by the district court to the arbitrators, the panel awarded defendants costs and attorney fees as determined by the panel.

In *Ierna*, the paragraph in question in the arbitration agreement provided as follows:

.... The prevailing party in arbitration shall be awarded in addition to damages, injunctive relief, specific performance or other relief, any and all costs of investigation and proof of facts, arbitrators' fees, and other costs of arbitration, as applicable ...

*Id.* at 1476.

In affirming the trial court the 11th Circuit stated:

Because the parties provided in their agreement for costs and expenses to be awarded to the prevailing party, the award is integral to the merits....

Appellants argue that the district court committed reversible error by confirming

the arbitrators' award. Appellants interpret the language of the 1977 agreement, which only awards to the prevailing party "any and all costs of investigation and proof of facts ... and other costs of arbitration," to preclude the award of attorneys' fees. Thus they argue that the arbitrators were without authority to award attorneys' fees to appellees.

*Id.*

The court continued:

We believe the 1977 language is sufficiently ambiguous so that the interpretation given by the arbitrators should not be disturbed. (citations omitted)

Courts are not to vacate arbitral awards except in the rare instances when the arbitrators commit an egregious error, make an irrational award, or exceed a specific contractual limitation on the scope of their authority. (citation omitted) While we disagree with appellees that the 1977 agreement *clearly* indicates the parties intended the prevailing party to recover attorney fees, we agree that the language of the agreement is susceptible to that interpretation. Whether this language includes attorney fees was an arbitrable issue, and the arbitrators' interpretation is reasonable.

*Id.* at 1476–77.

This court is of the opinion that the arbitration agreement in the case under consideration is much clearer and the language much stronger so as to indicate without any reasonable doubt that the arbitrators were to award the prevailing party attorney fees and expenses.

## II. *Subsequent Attorney Fees—Court-Awarded.*

■ Shoney's further contends that the trial court was without authority to award attorney fees incurred by plaintiffs in connection with the prosecution of their suit for confirmation of the arbitration award. We find this issue to be without merit, as well. T.C.A. § 29–5–315, part of the Uniform Arbitration Act as adopted in this state reads as follows:

Entry and enforcement of judgment—Costs.—Upon the granting of an order

confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application, and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

The Uniform Arbitration Act has been adopted by most states in this country. In *Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850 (Tenn.1985), our Supreme Court commented upon the method of construction of uniform acts, stating:

It is axiomatic that a purpose in enacting uniform laws is to achieve conformity, not uniqueness. While opinions by courts of sister states construing a uniform act are not binding upon this court, we are mindful that the objective of uniformity cannot be achieved by ignoring utterances of other jurisdictions. This court should strive to maintain the standardization of construction of uniform acts to carry out the legislative intent of uniformity. This does not mean that this court will blindly follow decisions of other states interpreting uniform acts but, this court will seriously consider the constructions given to comparable statutes in other jurisdictions and will espouse them to maintain conformity when they are in harmony with the spirit of the statute and do not antagonize public policy of this state.

*Id.* at 853.

In *County of Clark v. Blanchard Construction Co.*, 98 Nev. 488, 653 P.2d 1217 (1982), the Supreme Court of Nevada was called upon to construe the very same provision as found in the Uniform Arbitration Act adopted by that state. By "same" we mean the provision was identical. The Nevada Court interpreted this provision to mean that the trial court is permitted to award attorney fees for the effort counsel expended in obtaining an order confirming an award of arbitration. *See also Stein v. Feldmann*, 85 Ill.App.3d 973, 41 Ill.Dec. 270, 407 N.E.2d 768 (1980).

In the case at bar the trial court was readily aware of efforts expended by coun-

sel in seeking and obtaining the confirmation of the arbitration award. The award of attorney fees by the court in connection with this litigation, both in the trial court and as anticipated in this court, is within the discretion of the trial court. Being of the opinion that such an award does not constitute an abuse of that discretion, it will not be disturbed by us.

We also note that in awarding attorney fees below the trial court stated in its order that "plaintiffs may move the court to adjust the amount of attorney fees if future fees are reasonably incurred in connection with this action." We affirm this aspect of the Chancellor's order as well. Upon remand, the trial court is to conduct such hearing as is necessary in order to determine the amount of attorney fees to be awarded plaintiffs for work on the appellate level.

The judgment of the trial court is in all respects affirmed. Costs in this cause on appeal are taxed to Shoney's, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.