IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2001

## FORREST CATE MOTOR COMPANY, INC. v. DEALER COMPUTER SERVICES, INC.

**Appeal from the Circuit Court for Sequatchie County**
**No. 7464     Buddy Perry, Judge**

---

**No. M2001-01577-COA-R3-CV - Filed October 16, 2002**

---

Plaintiff appeals a declaratory judgment wherein the trial judge held that the mandatory arbitration provisions in the contract between the parties controlled and declared accordingly.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J. and PATRICIA J. COTTRELL, J., joined.

Catherine M. White, Chattanooga, Tennessee, for the appellant, Forrest Cate Motor Company, Inc.

Thomas O. Helton and Cameron S. Hill, Chattanooga, Tennessee, for the appellee, Dealer Computer Services, Inc.

## OPINION

Appellant, Forrest Cate Motor Company, Inc., is a Tennessee corporation doing business in Sequatchie County, Tennessee and is a franchised dealer of Ford Motor Company products.  On March 31, 1995, Appellant entered into a contract with Appellee, Dealer Computer Services, Inc. (formerly d/b/a Ford Dealer Computer Services, Inc.).  Under the terms of the contract, Appellant purchased certain computer equipment and software that enabled Appellant to access a catalog data base of both old and new parts for Ford Motor Company Products.  This computer system, (the CPD System), required equipment maintenance and modifications to accommodate updated software.

A little more than four years after entering into the contract, Appellee informed Appellant of the need for Appellant to buy certain new equipment to accommodate more complex software containing updated parts information through Ford Motor Company's global parts catalog or "GCAT System."  Appellant claims that the "GCAT System" is an entirely new system from the "CPD System" and that disputes between the parties as to this alleged new system are not subject to the

mandatory arbitration provision of the March 31, 1995 contract. Appellee asserts the contrary, and thus, the decisive issue in the declaratory judgment action filed by Appellant on March 22, 2000, is the applicability of this mandatory arbitration clause of the contract.

The case was tried on documentary evidence and submitted to the court on October 31, 2000, without oral testimony or depositions. In his final judgment of April 26, 2001, the trial court made the following findings of fact:

1. On March 31, 1995, Forrest Cate and DCS's predecessor, Ford Dealer Computer Services, Inc., entered a contractual agreement ("Agreement") for, among other things, the purchase by Forrest Cate of a computer system that provides data and information about Ford Motor Company vehicle parts.

2. Forrest Cate admitted that it entered into the Agreement, *see* Complaint at ¶ 3 and Amended Complaint at ¶ 3.

3. Forrest Cate does not dispute that DCS assumed the benefits and obligations of the Agreement from Ford Dealer Computer Services, Inc.

4. Forrest Cate admitted that the Agreement contains a valid arbitration clause. *See* Complaint at ¶ 8(a) and Amended Complaint at ¶ 7(a).

5. The Agreement defines several key terms, including, but not limited to, the "CPD System," "Enhancements and/or Modifications," and "Software," which are defined as follows:

a. CPD System - Computer system, including all computer equipment and software, that enables users to access current Ford Motor Company Ford and Lincoln/Mercury car and light truck parts catalog data.

b. Enhancements and/or Modifications - Any modification or addition that, when made or added to the Licensed Software, materially changes its utility, efficiency, functional capability, or application.

c. Software - A general term used to describe all programs used inside the computer and peripheral devices to make them perform any function. This term includes operating system, Documentation, corrections or Modification. Enhancements, microsoftware, and Firmware used within the central processing unit or within any peripheral device, terminal, or printer attached to the computer system.

6.     The Agreement outlines numerous duties and obligations between Forrest Cate and DCS concerning the CPD System and its software. In particular, the Agreement clearly contemplates that certain "upgrades," "modifications," and "enhancements" will from time-to-time occur to the CPD System and its software. For example,

> Dealer[, Forrest Cate,] shall provide FDCS unlimited access to the Equipment and shall cause employees to cooperate with FDCS in the maintenance of the Equipment and in the making of engineering changes and upgrades.

7.     The Agreement permits DCS to make "modifications" and "enhancements" to the software, and such changes may require Forrest Cate to expand its computer system.

> [DCS] will, from time-to-time, in its sole discretion, make Modifications and Enhancements to the Software. During the term of this Agreement, Dealer shall receive all generally released Enhancements/Modifications and Documentation applicable thereto. Dealer acknowledges and agrees that these Enhancements/ Modifications may at times require changes or expansion to Dealer's computer system such as computer power, memory, disk storage, or peripherals. Dealer agrees to make such changes or expansion at its expense as a necessary cost of obtaining the added Software functionality provided by the Enhancement/Modifications.

8.     In the Agreement, Forrest Cate also

> covenants and agrees to . . . [i]mplement all revisions to the Software and CD-ROM data files that are released by FDCS within thirty (30) days after received by Dealer. FDCS is under no obligation to provide Software or CD-ROM support for other than the then-current version of the Licensed Software.

9.     On the top of the first page of the Agreement, in bold, capital letters, and set off from other text, is the following statement: "THIS AGREEMENT IS SUBJECT TO ARBITRATION UNDER APPLICABLE STATUTE." This is clear, unambiguous notice to Forrest Cate that the Agreement is subject to arbitration. The arbitration provision is written in clear language and is set off by itself in a separate provision of the Agreement under the heading "ARBITRATION."

10.     The Agreement's arbitration provision states:

Except as provided otherwise in Section 5 of this Agreement, all disputes, claims, controversies and other matters in question between the parties to this Agreement, arising out of, or relating to this Agreement, or to the breach thereof, including any claim in which either party is demanding monetary damages of any nature including negligence, strict liability or intentional acts or omissions by either party, and which cannot be resolved by the parties, shall be settled by arbitration. Except as provided otherwise in this Section 17, the arbitration shall be administered in accordance with the commercial arbitration rules of the American Arbitration Association. Arbitrators shall be chosen from a panel of persons with knowledge of electronic data processing industry practices, contracts, and data processing systems. The arbitration proceeding will be held in Detroit, Michigan. In no event shall the demand for arbitration be made more than one (1) year after the claim or cause of action arises. The award of the arbitrator or arbitration panel shall be final an[d] binding, and there shall be no appeal therefrom. Judgment upon the award rendered by the arbitrator or arbitration panel may be entered in any court having jurisdiction. The U. S. Arbitration Act shall govern the interpretation and application of this Section 17. In the case of nonpayment by Dealer, this arbitration procedure shall in no way limit FDCS's remedies as provided in Section 11.

11. The arbitration provision is broad and comprehensive. It covers "all disputes, claims, controversies and other matte[r]s in question between the parties to this Agreement, arising out of, or relating to this Agreement, or to the breach thereof."

12. The arbitration provision recognizes the need for experts in the computer field to serve as arbitrators. It calls for arbitrators "chosen from a panel of persons with knowledge of electronic data processing industry practices, contracts, and data processing systems."

13. The Agreement states that it "shall be governed by the laws of the State of Michigan."

14. Understanding the "CPD System" is at the heart of this matter. Forrest Cate states it "did not contract for anything other than the CPD System." Responsive Memorandum, p. 3. Forrest Cate also states: "Additionally, the plaintiff did not agree to arbitrate anything other than matters directly related to the CPD System." *Id.* The Agreement defines the CPD System as the "Computer system, including all computer equipment and software, that enables users to access current

Ford Motor Company Ford and Lincoln/Mercury car and light truck parts catalog data."

15. Forrest Cate attaches as Exhibit B to the Complaint a letter dated August 10, 1999 from Ford Motor Company that explains the enhancements and modifications to the CPD System, including certain software and equipment. In pertinent part, the letter addresses parts catalog data and states that

> Ford Motor Company is making a major change in data formats for CPD parts information.
>
> * * * * *
>
> Your CPD software will be updated to handle both the original data format and the new GCAT data format simultaneously - which will require new equipment and more complex software. Because the GCAT data format is illustration oriented, considerably more data storage will be required on your CPD Server. Data will be distributed via a DVD disk instead of the CD-ROM disks currently used.
>
> Therefore, your CPD Server will need to be upgraded to accommodate Windows 98, larger programs, more storage capacity, and a DVD drive to deal with the new GCAT data requirements.

16. Forrest Cate attached as Exhibit C to the Complaint a letter dated September 1, 1999 from Ford Motor Company that further explains the enhancements and modifications to the CPD System. In pertinent part, the letter addresses parts catalog data and states that

> Improving the quality of catalog text and illustrations has been a long-standing Dealer and Parts Manager request.
>
> * * * * *
>
> The new catalog will increase productivity, improve customer satisfaction and add value to your parts operations.

17. Forrest Cate attached as Exhibit E to Forrest Cate's Responsive Memorandum a letter dated September 2, 1999 from DCS, which notes: "Your CPD software will be updated to handle both the original data format and the new GCAT data format simultaneously - which will require more complex software."

18. Forrest Cate attached as Exhibit F to Forrest Cate's Responsive Memorandum a letter dated October 12, 1999 from DCS, which states that the enhancements would require "your CPD Server be upgraded to a new Pentium CPD Server."

19. Forrest Cate attached as Exhibit G to Forrest Cate's Responsive Memorandum a letter dated January 4, 2000 from DCS, which addressed the release date for "the new CPD GCAT data format" and wished "all CPD clients to be able to continue operating efficiently up to and beyond the conversion in data format."

20. DCS has had since Forrest Cate signed the Agreement, and still has, an office in Southfield, Michigan. *See* Affidavit of Michael Creagh, ¶ 7 ("DCS also currently maintains offices at 1000 Town Square, Southfield, Michigan 48075. [Its] offices in Southfield, Michigan make it convenient to work with Ford Motor Company on CPD or other matters relating to the ongoing contractual relationship between DCS and Ford Motor Company. DCS communicates with Ford Motor Company on issues related to CPD and other issues on at least a weekly basis.").

21. DCS has frequent contact with Ford Motor Company, and DCS uses its Southfield, Michigan offices to facilitate that contact. "Ford Motor Company supplies to DCS on at least a monthly basis parts catalog data that is utilized by DCS to prov[ide] an electronic catalog to Ford dealers. The electronic parts catalog, or CPD, is provided to Ford dealers pursuant to a contract as required by the contract between DCS and Ford Motor Company. The parts data set forth in CPD is Ford Motor Company data. The parts data contained in the electronic parts catalog describe Ford parts. . . . Ford Motor Company works with DCS on an ongoing basis in connection with the development of CPD." Creagh Affidavit, ¶ 4.

22. The clear weight of the evidence confirms that the Agreement contemplated the enhancements and modifications to the CPD System made by DCS.

The determinative question on appeal is a question of law and is conclusively resolved in favor of Appellee by the provision of the contract quoted by the trial court in its Findings of Fact no. 7:

> [DCS] will, from time-to-time, in its sole discretion, make Modifications and Enhancements to the Software. During the term of this Agreement, Dealer shall receive all generally released Enhancements/Modifications and Documentation applicable thereto. Dealer acknowledges and agrees that these Enhancements/ Modifications may at times require changes or expansion to Dealer's computer system such as computer power, memory, disk storage, or peripherals. Dealer agrees to make such changes or expansion at its expense as a necessary cost of obtaining the added Software functionality provided by the Enhancement/Modifications.

(emphasis added) The question for the trial court, and the question for this Court on appeal, is not whether the "GCAT System" is a change or expansion of the "CPD System," but rather, what is the

proper forum to address such a question. The expansive, all-inclusive provisions of the arbitration clause in the contract bind both parties to compulsory arbitration, and this fact would be true under either the law of Michigan or the law of Tennessee. *Buraczynski v. Eyring*, 919 S.W.2d 314, 318-19 (Tenn. 1996); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905, 908 (Tenn. Ct. App. 1991); *Kauffman v. Chicago Corp.*, 466 N.W.2d 726, 730 (Mich. Ct. App. 1991); *Amtower v. William C. Roney & Co.*, 590 N.W.2d 580, 583 (Mich. Ct. App. 1998).

Since the controlling question is one of law, it is before this court *de novo* without any presumption of correctness of the finding of the trial court. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

The trial court correctly ruled in favor of the appellee on this issue and granted the appellee's Motion to Dismiss and Compel Arbitration.

Subsequent to the filing of the initial Complaint on April 22, 2000, Plaintiff sought, by amended complaints on August 7, 2000 and October 10, 2000, to convert the case from a declaratory judgment action into an action challenging the validity of the contract on principles of overreaching and adhesion. After having admitted in the original Complaint that the laws of Michigan governed under the choice of forum provisions in the contract, Plaintiff withdrew this admission and also challenged the validity of the choice of forum provisions of the contract. The Complaint had already been met by a responsive pleading (Appellee's Motion to Dismiss) at the time leave of the court was sought to file the amended complaints. *Wilson v. Ricciardi*, 778 S.W.2d 450 (Tenn. Ct. App. 1989). No order of the court, pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure, appears in the record granting leave to file either the Amended Complaint of August 7 or the Amended Complaint of October 5. But, in its Amended Memorandum in Support of Motion to Dismiss and to Compel Arbitration filed October 20, 2000, Appellee asserts:

On or about August 2, 2000, Forrest Cate submitted a Motion to Amend Complaint for Declaratory Judgment ("Motion to Amend") and a responsive memorandum to the Motion to Dismiss and Compel ("Responsive Memorandum"). Without waiving any of its defenses or arguments DCS otherwise would have had or has to Forrest Cate's Complaint and Motion to Amend, DCS, in the interests of judicial economy and efficiency, permitted Forrest Cate to file its Amended Complaint for Declaratory Judgment ("Amended Complaint").

DCS now submits this Amended Memorandum to Dismiss and Compel in response to Forrest Cate's Amended Complaint.

Such is not in the interest of judicial economy, but the above statement by Appellee in the amended memorandum effectively waives the "written consent" provision of T.R.C.P. Rule 15.01.

The trial court disposed of the factual allegations asserted in the amended complaints filed by Appellant in a conclusion of law that provided:

1.      Forrest Cate did not plead fraud with the requisite particularity. *See Harvey v. Ford Motor Credit Company*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999) (citing *Tenn. R. Civ. P.* 9.02).  In addition, "no man can recover upon the theory of fraud or mistake with respect to any matter of fact about which he has actual knowledge or legally imputed knowledge." *Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993).  In this case, the facts show that the Agreement signaled to Forrest Cate that (1) it was subject to arbitration in Michigan, (2) that Michigan law controlled, and (3) the DCS had, and has, an office in Southfield, Michigan.  Forrest Cate cannot claim fraud when such facts were clearly known to it.

This Court has observed: "Although the Court has the authority to settle disputed issues of fact in Declaratory Judgment matters, such settlement is ordinarily left to other forums." *Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383, 387 (Tenn. Ct. App. 1983).  Declaratory judgment may be properly refused if judicial investigation of disputed facts is first necessary. *Nicholson v. Cummings*, 217 S.W.2d 942 (Tenn. 1949).

A more pressing reason exists for affirming the trial judge as to all matters set forth in the amended complaints.  No proof was ever taken to support the allegations of overreaching, adhesion and intimations of fraud.  Much of the documentation submitted in the extensive appendix to the brief of Appellant was never admitted into evidence.  The circumstances surrounding the inception of the contract are supported in the record only by the Affidavit of Forrest Cate, who never testified.

When parties choose or acquiesce in the choice of a declaratory judgment proceeding to address disputed issues of fact and the trial court, in its discretion, allows them to do so, the disputed issues of fact must be actually tried, and the record of such trial must be properly preserved for appellate review under the provisions of T.R.A.P. Rule 24.  Without such a record, this Court must presume that the trial court was correct in its disposition of factual issues. *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

Under these circumstances, this Court is, likewise, unable to review issues as to the choice of forum provisions of the contract, although, as already observed in this particular case, the result on the original declaratory judgment suit would be the same whether Michigan law or Tennessee law applies.

The judgment of the trial court is in all respects affirmed, and costs are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE