IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS DECEMBER 8, 2010

## DAVID L. MORROW and JUDY M. WRIGHT v. SUNTRUST BANK, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
No. CH-08-0813-2    Arnold Goldin, Chancellor

### No. W2010-01547-COA-R3-CV - Filed January 31, 2011

Appellants filed a complaint for declaratory judgment seeking to be named the sole heirs to trust residue. However, the Attorney General moved for summary judgment, claiming that a later trust document provided for a full disposition of the trust assets, and therefore, that no assets remained to which Appellants could be entitled. The trial court granted summary judgment, finding that the intent to leave no residue stated in the later document superseded the prior edition. On appeal, Appellants argue that intent is irrelevant without a determination of the legal efficacy of the trust documents, and that the trial court lacked subject matter jurisdiction to render an advisory opinion. We find that the trial court properly exercised subject matter jurisdiction in adjudicating the declaratory judgment. Additionally, we affirm the trial court's denial of attorney fees and costs to SunTrust incurred at trial, and we decline to award SunTrust its attorney fees and costs incurred on appeal.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, David L. Morrow and Judy M. Wright

Kenneth P. Jones, M. Matthew Thornton, Memphis, Tennessee, for the appellee, Suntrust Bank

Robert E. Cooper, Jr., Attorney General and Reporter, Janet M. Kleinfelter, Deputy Attorney General, Nashville, Tennessee, on behalf of Robert E. Cooper, Jr., Attorney General and Reporter

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

David L. Morrow and Judy M. Wright ("Appellants") are the nephew and niece, respectively, of Helen B. Goza, the settlor of the trust documents at issue. The original Trust Agreement was executed by Helen B. Goza on August 16, 1991 ("1991 Trust Agreement"). Under the 1991 Trust Agreement, a Living Trust was created which provided that "so much of the income and/or principal as the Settlor may from time to time request" be paid to Ms. Goza "for the support, maintenance, health education, support in reasonable comfort, best interests and welfare of the Settlor and her son, John J. Goza[.]" The 1991 Trust Agreement further provided that if Ms. Goza's son survived her, the Trustee "shall pay or apply for the benefit of John J. Goza so much of the income and/or principal of the trust estate as the Trustee may from time to time deem advisable for his health, education, support in reasonable comfort, best interest and welfare[.]" If, however, John failed to survive his mother, or upon his death, the Trustee was to distribute $5,000.00 to the American Diabetes Association and ten percent of the trust estate assets to each Appellant. Following these distributions, the 1991 Trust Agreement provided that "the remaining trust estate shall be held, IN TRUST, for the benefit of those institutions which the Trustee shall select that provide services to the handicapped[.]"

On March 9, 1999, Ms. Goza executed an "Amended and Restated Revocable Trust Agreement" ("March 1999 Agreement"), which amended the 1991 Trust Agreement. The March 1999 Agreement provided that if John Goza survived his mother, the Trustee should, upon Ms. Goza's death, set aside a portion of the trust estate as a separate trust for the benefit of John during his lifetime, with the balance of the trust estate to be distributed to a separate Perpetual Trust "for the benefit of those organizations which the Trustee shall select that provide services to the mentally handicapped[.]"  Regarding the distribution of the assets of the separate trust for John's benefit, the March 1999 Agreement provided that upon John's death, the Trustee should pay $5,000.00 to the American Diabetes Association, but it eliminated the ten percent, each, distribution to Appellants. The March 1999 Agreement made no further provision for the distribution of the assets of the separate trust for John upon his death.

A second "Amended and Restated Revocable Trust Agreement" ("April 1999 Agreement") was executed on April 9, 1999. The April 1999 Agreement provided that upon John's death, $5,000.00 should be disbursed to the American Diabetes Association, with the balance going to the separate Perpetual Trust benefitting organizations serving the mentally handicapped.

Helen B. Goza died on May 15, 2001, survived by her son, John J. Goza. John died on September 26, 2007, without issue. On May 1, 2008, Appellants filed a "Complaint for Declaratory Judgment," pursuant to the Tennessee Declaratory Judgment Act,[1] in the Shelby County Chancery Court against SunTrust Bank ("SunTrust"), as Trustee.[2] The complaint alleged that the March 1999 Agreement "fails to provide for the complete disposition of the residue or remaining assets of the Son's Trust upon the death of Decedent's Son[,]" and therefore, that the residue from such trust should pass to them as "heirs at law of Decedent according to the rules of intestate succession." Specifically, Appellants sought the following declarations:

> The Court declare that the Helen B. Goza Amended and Restated Revocable Trust [dated March 9, 1999] fails to provide for the final disposition of the residue of the Trust for John J. Goza.

> The Court declare that the residue or remaining assets of the Trust for John J. Goza pass by operation of law to the heirs at law of Helen B. Goza in accordance with the Tennessee laws of intestate succession.

> The Court declare that Plaintiffs are the sole heirs at law of Helen B. Goza.

In its Answer, SunTrust asserted that because the claim involved charitable beneficiaries and any judgment would affect "the amount, administration or disposition of a charitable gift[,]" the action should be dismissed for failure to name Robert E. Cooper, Jr., the Attorney General and Reporter for the State of Tennessee, as a party pursuant to Tennessee Code Annotated section 35-13-110. Appellants then, with the written consent of SunTrust, filed an amended complaint for declaratory judgment on June 26, 2008, naming the Attorney General as a party.[3]

The Attorney General filed his answer to the amended complaint, asserting that Appellants' complaint failed to state a claim upon which relief could be granted because the

---

[1]The Tennessee Declaratory Judgment Act, Tennessee Code Annotated section 29-14-102, et seq. grants courts of record "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

[2]The Complaint names SunTrust Bank as Trustee of the Helen B. Goza Amended and Restated Revocable Trust, the Trust for John J. Goza, and the Helen B. Goza Perpetual Trust.

[3]The Attorney General filed a motion to intervene on July 2, 2008, which according to Appellants, "crossed in the mail" with their amended complaint.

March 1999 Agreement had been superseded by the April 1999 Agreement, "which makes a full and complete disposition of any and all residue and remaining assets of the Trust established for John J. Goza[.]" SunTrust then filed its answer, contending, for the same reason, that Appellants were not entitled to relief.

On October 29, 2008, the Attorney General filed a motion for summary judgment, submitting that Appellants' claims for declaratory relief were premised upon the provisions of the March 1999 Agreement, which had been superseded. Because the April 1999 Agreement provided for a full disposition of all assets, there were no remaining assets that would revert to Ms. Goza's estate to which Appellants would be entitled. Accordingly, the Attorney General argued, he was entitled to summary judgment as a matter of law.

Appellants responded to the motion for summary judgment by arguing, among other things, that the April 1999 Agreement could not be authenticated. Attached to the Attorney General's reply was the affidavit of attorney R. Michael Potter authenticating the April 1999 Agreement based upon his personal knowledge.

A hearing was held on the Attorney General's motion for summary judgment on August 25, 2009. At the hearing, the parties and the court agreed that the dispositive issue was the authenticity of the April 1999 Agreement. Therefore, the trial court adjourned the hearing to allow the Attorney General to amend and/or supplement his motion with additional evidence regarding authenticity, and to allow Appellants the opportunity to conduct additional discovery.

On September 8, 2009, the Attorney General filed the affidavits of Trust Officer Matthew Buyer and notary public Sheri Haas in support of his motion for summary judgment, both of whom testified as to the authenticity and validity of the April 1999 Agreement. Appellants then filed a supplemental response in opposition to the Attorney General's motion for summary judgment, in which they argued, among other things, that Tennessee's rule of repugnancy "forces the intent stated in the April 9 Document to yield to the statement in the John Goza Trust created by the March 9 Contract." Based on their repugnancy argument, Appellants asked that summary judgment be granted on their behalf "declaring the [April 1999 Agreement] null and void as a legally efficacious contract that changes or alters the unambiguous statement of Settlor's and Trustee's intent within the four corners of the John Goza Trust created by the [March 1999 Agreement]." In their supplemental response, Appellants also argued that because the April 1999 Agreement stated that it amended the 1991 Agreement, which became a "complete nullity" when the March

1999 Agreement was executed, the April 1999 Agreement's purpose was to achieve an impossibility, rendering it an invalid contract.[4]

A second hearing was held on November 18, 2009, on the Attorney General's motion for summary judgment. The trial court entered a "Final Order Granting Summary Judgment" on February 2, 2010. The trial court found as follows:

1. That, at the conclusion of the hearing on August 25, 2009, the only issue to be dealt with was whether or not the Amended and Restated Revocable Trust Agreement dated April 9, 1999, was or had been authenticated and to give Plaintiffs an opportunity to review the document;

2. That there is no dispute about the fact that the Amended and Restated Revocable Trust Agreement dated April 9, 1999, had been authenticated and that an opportunity has occurred whereby depositions have been taken;

3. That, after the August 25, 2009 hearing, Plaintiffs have raised three arguments: one, the doctrine of repugnancy; two, the actions on the part of the trustee; and, three, whether or not the Amended and Restated Revocable Trust Agreement dated April 9, 1999 itself is a nullity;

4. That, with regard to the doctrine of repugnancy, the Court finds that the doctrine is not applicable to the facts of this case;

5. That, with regard to the actions of the trustee, the Court finds that it is clear that this issue did not arise until after Mr. John Goza's death, because there was no reason for it to arise. At that point, the subsequent Agreement dated April 9, 1999 was discovered. Accordingly, as to whether or not the actions of the trustee could be considered relevant to the intent of Mr. Goza, the Court finds that the timing of the actions of the trustee is such that that should not be considered;

6. That, with regard to the issue of whether the Amended and Restated Revocable Trust Agreement dated April 9, 1999 is a nullity, the issue rises and falls on whether or not the Court is going to base its decision on the initial paragraphs stating that the Agreement amends or restates the Amended and Restated Revocable Trust Agreement dated [August 16, 1991], rather than the Amended and Restated Revocable Trust Agreement dated March 9, 1999.

---

[4]They further argued that the April 1999 Agreement had no superseding effect on the March 1999 Agreement because there was no new and different consideration for the April 1999 Agreement.

7. That the Tennessee Supreme Court has made it clear that this Court has to look at the entire sequence of events and agreements in making that determination. Here, we have the initial Agreement, the subsequent Amended and Restated Revocable Trust Agreement dated March 9, 1999, and subsequent to that, the Amended and Restated Revocable Trust Agreement dated April 9, 1999. The Court believes that it can take into consideration what actions Mr. Potter took, the attorney who drafted the Agreement, when he discovered that there was language missing in the Amended and Restated Revocable Trust Agreement dated March 9, 1999, and advised Mrs. Goza that that language should have been different than it was, and he drafted a subsequent Agreement, explained to her why he did it, presented it to her, and she signed it.

8. To simply abrogate Mrs. Goza's intent based on this paragraph rather than integrating the Amended and Restated Revocable Trust Agreement dated April 9, 1999, into the Amended and Restated Revocable Trust Agreement dated March 9, 1999, would be completely inapposite to what the intent of Mrs. Goza was.

9. That it was clear that the language that was contained in the Amended and Restated Revocable Trust Agreement dated April 9, 1999, provided for complete disposition and distribution of the trust assets following the death of her son and that the language set out in the Amended and Restated Revocable Trust Agreement dated April 9, 1999, was the intent of Mr[s]. Goza and that the language in the Amended and Restated Revocable Trust Agreement dated April 9, 1999, is the language that prevails in this matter.

Based on the findings, the trial court granted the Attorney General's motion for summary judgment.[5]

Appellants filed a motion to alter or amend the judgment, arguing for the first time, among other things, that the April 1999 Agreement was legally ineffective to create the John Goza Trust and the Perpetual Trust because the Agreement's attempt to transfer Mrs. Goza's post-death estate was a prohibited attempt to make a testamentary disposition by a document which did not comply with the requirements of Tennessee Code Annotated section 32-1-104, governing the execution of wills. Because the April 1999 Agreement was ineffective to create the purported trusts, Appellants argued, upon Mrs. Goza's death in 2001, her living

---

[5]The trial court initially stated its findings orally at the hearing; however, these findings were restated in the February 2, 2010 order.

trust terminated and the proceeds of such trust should have been paid into her estate for distribution to her heirs-at-law, the Appellants.

The trial court, on June 15, 2010, entered an order denying Appellants' motion to alter or amend the judgment. Appellants timely appealed from such order.

## II. ISSUE PRESENTED

Appellants presents the following issue for review:

1.      There being no pleading for affirmative relief, other than the declaratory judgment in the amended complaint [], and this claim having presented the Court with nothing more than a request for a judgment that, if entered, would not be of any practical benefit to either party in resolving how the post-death estate of the decedent be distributed (i.e., the intent of the decedent expressed in the writings presented to the court is irrelevant when deciding the question as to the distribution) was the trial court without subject matter jurisdiction to adjudicate the declaratory judgment, resulting in the issuance of an advisory opinion that created a "judgment" with no force or effect w[hen] issued?

For the following reasons, we find that the trial court properly exercised subject matter jurisdiction in adjudicating the declaratory judgment. Additionally, we affirm the trial court's denial of attorney fees and costs to SunTrust incurred at trial, and we decline to award SunTrust its attorney fees and costs incurred on appeal.

## III. DISCUSSION

On appeal, Appellants argue that the "summary declaratory judgment by the trial court was nothing other or more than an advisory opinion of no practical benefit or detriment to anybody, i.e., a 'judgment' of no force and no effect." Essentially, Appellants contend that the judgment merely determined which document–the March 1999 Agreement or the April 1999 Agreement–expressed Mrs. Goza's true intentions. The trial court's finding that the intentions stated in the April 1999 Agreement to provide for a complete disposition of the trust assets superseded the intentions stated in the March 1999 Agreement to leave a lapsed legacy, Appellants assert, is irrelevant. According to Appellants, the court was required to first consider the legal efficacy of all three documents at issue–the 1991 Trust Agreement,

-7-

the March 1999 Agreement, and the April 1999 Agreement. Without first determining which, if any, of these documents was legally sufficient to accomplish Mrs. Goza's intentions, the trial court's summary judgment finding regarding which document controlled as to her intention was merely advisory, and therefore, the trial court lacked subject matter jurisdiction. Appellants claim that "a genuine issue is whether or not the documents are valid to effectuate the disposition of her property. Until that question is placed before a court, any other ruling is just advisory as what to do in the future, if the documents are effectual." They assert that "the proceedings below progressed from inception to conclusion on the false presupposition that the [1991 Trust Agreement, the March 1999 Agreement, and the April 1999 Agreement], one or all or two in combination, were legally effectual instruments able to control the distribution of Mrs. Goza's post-death estate." However, according to Appellants, "[t]he determination of the efficacy of these documents never occurred." Based on this argument, Appellants seek to have their complaint for declaratory judgment dismissed, *nunc pro tunc*, to May 1, 2008.[6]

"Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy." ***McQuade v. McQuade***, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Aug. 4, 2010) (citing *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004)). Without subject matter jurisdiction, a court cannot enter a valid, enforceable order. ***Id.*** (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). The issue of whether subject matter jurisdiction exists may be raised at any time by the parties or by the appellate court, *sua sponte*. ***Id.*** (citing *County of Shelby v. City of Memphis*, 365 S.W.2d 291 (Tenn. 1963); *Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009)). "[W]hen subject matter jurisdiction is questioned, the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred on it the power to adjudicate the case before it." ***Id.*** (citing *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). The existence of subject matter jurisdiction is a question of law, which we review *de novo* without a presumption of correctness. ***State v. Cawood***, 134 S.W.3d 159, 163 (Tenn. 2004) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)).

---

[6]Appellants' brief states that the complaint should be dismissed, *nunc pro tunc*, to May 8, 2008, the day the complaint was filed. However, this appears to be a typographical error, as the complaint was filed May 1, 2008.

According to the Attorney General's brief, Appellants have filed a complaint in the Shelby County Probate Court seeking a determination of their rights, if any, to the remaining trust assets. A dismissal of Appellants' complaint, he claims, would allow Appellants to proceed with their probate action without estoppel or *res judicata* issues.

The main purpose of the declaratory judgment act is to "'settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" *Safeco Ins. Co. of Am. v. Simpson Bridge Co., Inc.*, No. 03A01-9510-CH-00361, 1996 WL 87449, at *2 (Tenn. Ct. App. E.S. Feb. 29, 1996) (quoting Tenn. Code Ann. § 29-14-113). The Act is "'to be liberally construed and administered,'" *id.* (quoting Tenn. Code Ann. § 29-14-113), but "'[n]evertheless, certain limitations must be placed upon the operation of the statute.'" *Id.* (quoting *Hodges v. Hamblen County*, 277 S.W. 901, 902 (Tenn. 1925)).

"That to maintain an action for a declaratory judgment a justiciable controversy must exist between persons with adverse interests is well settled." *Parks v. Alexander*, 608 S.W.2d 881, 891-92 (Tenn. Ct. App. 1980) (citing *Jared v. Fitzgerald*, 195 S.W.2d 1, 4 (Tenn. 1946)). "For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a real legally protectable interest must be at stake on the part of plaintiff." *Id.* at 892 (citing *Cummings v. Beeler*, 223 S.W.2d 913, 915 (Tenn. 1949)). "A bona fide disagreement must exist; that is, some real interest must be in dispute." *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008) (citing *Goetz v. Smith*, 278 S.W. 417, 418 (Tenn. 1925)). A controversy is not justiciable under the Tennessee Declaratory Judgment Act where "the controversy depends upon a future or contingent event or involves a theoretical or hypothetical state of facts[.]" *Parks*, 608 S.W.2d at 892 (citing *Story v. Walker*, 404 S.W.2d 803, 804 (Tenn. 1966); *U.S. Fid. & Guar. Co. v. Askew*, 191 S.W.2d 533, 534-35 (Tenn. 1946)); *see also Jared v. Fitzgerald*, 195 S.W.2d 1, 4 (Tenn. 1946) (Neil, J., concurring) ("A declaratory judgment will not determine the rights of parties upon a state of facts which has not arisen, nor upon a matter which is speculative, *future*, *contingent*, or uncertain"). "The Declaratory Judgments Act does not give the courts jurisdiction to render advisory opinions to assist the parties or to allay their fears as to what may occur in the future." *Id.*

Again, Appellants argue that the trial court's order granting summary judgment was merely advisory because until the court considered the legally efficacy of the three documents–the 1991 Trust Agreement, the March 1999 Agreement, and the April 1999 Agreement–its finding that the April 1999 Agreement superseded the March 1999 Agreement with regard to Mrs. Goza's intent was irrelevant. We disagree.

As we stated above, in their supplemental response in opposition to the Attorney General's motion for summary judgment, Appellants argued that the April 1999 Agreement was not legally efficacious based upon both the repugnancy doctrine and their argument that the April 1999 Agreement purported to amend the nullified 1991 Trust Agreement. These arguments were specifically rejected by the trial court. In their appellate reply brief,

Appellants restate the argument set forth in their motion to alter or amend that the April 1999 Agreement was legally ineffective to create either the John J. Goza Trust or the Perpetual Trust, as the writings failed to comply with Tennessee Code Annotated section 32-1-104.[7] Appellants also question, in their appellate reply brief, whether Mrs. Goza, on the date the Revocable Trust was created, effectively relinquished control of the trust property such that a property interest was created in the beneficiaries of the John J. Goza Trust and the Perpetual Trust. These arguments, however, were not raised or contemplated in the trial court prior to its order granting summary judgment. Bearing in mind that subject matter jurisdiction cannot be waived and may be raised at any time, we nonetheless find that Appellants may not raise additional grounds to undermine a trial court decision which was based upon a proper exercise of subject matter jurisdiction when entered. Appellants' amended complaint presented real questions with legally protectable interests at stake. Specifically, their complaint alleged, in part, the following:

> On August 16, 1991, Decedent, as settlor and trustee, established the Helen B. Goza Revocable Trust.
>
> On March 9, 1999, Decedent, as settlor and trustee, amended and restated the Goza Trust and executed the Helen B. Goza Amended and Restated Revocable Trust . . . agreement.
>
> . . . .
>
> Pursuant to Article III of the Amended Goza Trust, upon the death of Decedent, a trust for Decedent's son . . . was established contingent on Decedent's Son surviving Decedent.
>
> . . . .
>
> Decedent's Son survived Decedent.
>
> . . . .
>
> Decedent's Son died on September 26, 2007, with no issue.
>
> Article III of the Amended Goza Trust fails to provide for the complete

---

[7] The trial court denied Appellants' motion to alter or amend. The issue raised on appeal, however, is not whether this denial was proper, but instead whether the trial court lacked subject matter jurisdiction to adjudicate the declaratory judgment.

disposition of the residue or remaining assets of the Son's Trust upon the death of Decedent's Son.

Plaintiffs aver that, if a trust created by a decedent fails to provide for the final disposition of the residue of such trust, then the residue passes by operation of law to the heirs at law of Decedent according to the rules of intestate succession.

Plaintiffs aver that Plaintiffs are the sole heirs at law of Decedent.

Based on these allegations, Plaintiffs requested the court declare "that the Helen B. Goza Amended and Revocable Trust fails to provide for the final disposition of the residue of the Trust for John J. Goza[,]" that "the residue of remaining assets of the Trust for John J. Goza pass by operation of law to the heirs at law of Helen B. Goza in accordance with the Tennessee laws of intestate succession[,]" and that "Plaintiffs are the sole heirs at law of Helen B. Goza."[8]  Both SunTrust and the Attorney General denied that Appellants were entitled to any of the relief sought.  We find where there existed "a justiciable controversy . . . between persons with adverse interests[,]" *see Parks*, 608 S.W.2d at 891-92 (citing *Jared*, 195 S.W.2d at 4), at the time action was taken with regard to a request for declaratory judgment, such action does not become advisory simply because a contingency is raised on appeal, particularly by the party who sought the declaratory judgment.  To hold otherwise would thwart the Act's purpose of settling uncertainties.

Finally, we address SunTrust's request for both trial court and appellate attorney fees and costs incurred in defending Plaintiffs' action.[9]  SunTrust contends that if Plaintiffs are not forced to pay such costs that "the Trust will end up paying the Trustee's attorney fees, to the detriment of the charitable organizations that provide services to the handicapped, that had helped Decedent's Son during his lifetime, and that benefit from the Trust."  It further argues that Plaintiffs' argument that the trial court lacks subject matter jurisdiction "borders on the frivolous[,]" pointing out that Plaintiffs, themselves, instituted the action.

---

[8]In their appellate reply brief, Appellants attempt to argue that even if the trial court had subject matter jurisdiction, that any adjudication of the three documents' legal efficacy would require vacating because indispensable parties–all heirs-at-law–were not joined.

[9]In its answer to Plaintiffs' complaint for declaratory judgment, SunTrust sought an award of attorney fees and costs incurred in defending the action.  Although the trial court apparently failed to specifically address SunTrust's request, in its "Order Amending Order Denying Plaintiffs' Motion to Alter or Amend Judgment[,]" the trial court stated that "[a]ny outstanding claims or motions of any party that have not been expressly adjudicated are DISMISSED in their entirety with prejudice."

Additionally, SunTrust cites Plaintiffs' probate action filed subsequent to the chancery court's grant of summary judgment, which it claims caused "the Trustee to incur additional attorney fees regarding the same matters at issue in the present case."

The Tennessee Uniform Trust Code provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, *may* award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." **Tenn. Code Ann. § 35-15-1004(a)** (emphasis added). As we noted above, the trial court in this case declined to award SunTrust its attorney fees. A trial court has discretion to award attorney fees. ***Wachtel v. Shoney's, Inc.***, 830 S.W.2d 905, 909-10 (Tenn. Ct. App. 1991). Therefore, this Court may reverse the trial court's denial of an award of attorney fees only for an abuse of discretion by the trial court. ***Id.*** Under this standard, we may not simply substitute our judgment for that of the trial court. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). Applying this deferential standard, we cannot say that the trial court abused its discretion when it denied SunTrust it attorney fees and costs incurred in defending the action. Similarly, the decision whether to award attorney fees on appeal is within the sound discretion of this Court, ***see Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995), and we find it appropriate to decline to award appellate attorney fees and costs.

## V. CONCLUSION

For the aforementioned reasons, we find that the trial court properly exercised subject matter jurisdiction in adjudicating the declaratory judgment. Costs of this appeal are taxed to Appellants, David L. Morrow and Judy M. Wright, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.